**SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB) and Philadelphia Industrial Development Corporation Food Distribution Center, Inc. (PIDC–FDC, Inc.) and Center City Residents Association (CCRA) and Mary Cawley Tracy and Judith Eden**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA and City of Philadelphia and Joseph G. Procacci and Procacci Brothers Sales Corporation.**

**Society Created to Reduce Urban Blight (SCRUB), Mary Cawley Tracy and Judith Eden, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1999.

Decided April 5, 1999.

Reargument Denied June 3, 1999.

---

118

Robert M. Jaffe, Philadelphia, for amicus curiae.

Vincent B. Mancini, Media, for appellees.

Before McGINLEY, J., PELLEGRINI, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Society Created to Reduce Urban Blight (SCRUB), Mary Cawley Tracy (Tracy)[1] and Judith Eden (Eden)[2] (collectively, Protestors) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) quashing their appeal from the Zoning Board of Adjustment of

---

1. The SCRUB is a coalition of Philadelphia neighborhood groups, health organizations, businesses, schools and religious groups. It was first organized in 1990 in response to city council hearings on the enactment of sign ordinances in Philadelphia. Tracy is a founding member and current president of SCRUB.

2. Eden is an individual and the executive vice president of the civic organization Center City Residents' Association (CCRA). CCRA's members are taxpayers and residents of the Center City section of Philadelphia.

the City of Philadelphia's (Board) decision granting a variance to Joseph G. Procacci and Procacci Brothers Sales Corporation (collectively, Landowner) for the erection of outdoor signs because Protestors lacked standing to challenge the Board's decision.

Landowner owns eight parcels of property covering a total of 32 acres located in the Food Distribution Center (FDC)[3] of Philadelphia, which are primarily used for the warehousing, processing, distribution and sale of various food products. A majority of the land is devoted to loading docks, truck parking and accessory automobile parking. The area immediately outside of the FDC is predominantly industrial and transportation/public utility oriented. Also located in this area are 21 freestanding, non-accessory outdoor signs that advertise to highway travelers on I–95, I–76 and the approach ramp to the Walt Whitman Bridge.

In December 1996, Landowner applied to the Department of Licenses and Inspections (Department) for zoning and use permits to:

- Erect and use one (1) freestanding, double-faced, non-accessory outdoor advertising sign at 3051 South Front Street a/k/a 3305 Packer Avenue;[4]

- Erect and maintain one (1) freestanding, non-accessory, illuminated sign at 3655–61 Lawrence Street;[5] and

- Erect and maintain two (2) freestanding, non-accessory, double-faced, illuminated V-shaped signs at 3333 South Front Street a/k/a 50 Packer Avenue.[6]

The Department denied all of Landowner's applications because the dimensions of the signs did not conform to the requirements of Section 14–604 of the Philadelphia Zoning Code (Code), and outdoor advertising signs were prohibited in the FDC district pursuant to Section 14–608(1)(a) of the Code. Landowner appealed to the Board and sought a variance[7] to erect the signs.

In support of its request for a variance, Landowner presented witnesses who testified that erecting the signs would allow Landowner's property to be fully utilized by allowing it to receive income from sign rentals and that the signs would not be detrimental to the health, safety and welfare of the FDC district or any other area.

In opposition to Landowner's request for a variance, Tracy and Eden testified both as individuals and as representatives of their respective organizations. Landowner objected to their participation, either individually or as representatives of their organizations, because neither they nor their organizations had any tangible connection to the area where the signs were to be erected. The Board, however, allowed them to testify. The essence of Tracy's and Eden's testimony was that Landowner had failed to demonstrate the requisite hardship necessary for the Board to grant it a variance.[8]

3. The FDC is bound by I–95 on the south and east; I–76, the Walt Whitman Bridge and the approach ramps on the north; and 11th Street on the west.

4. This lot is enclosed and approximately 2.79 acres located at the northeast corner of Front Street and Packer Avenue. The lot houses a small one-story commercial structure and is used as a truck repair facility.

5. This lot is fenced and approximately 4.56 acres housing a two-story commercial structure and employs approximately 250 union workers for packing and distributing fruits and vegetables to all over the United States.

6. This parcel covers approximately 8.02 acres that were acquired in 1992 from the former

Oscar Meyer plant and holds a 340,000 square foot building used primarily for storage of products from Italy and Chile. The remainder of the lot is used for parking and the repair of company trucks.

7. The standard for the grant of a variance requires that, "[t]he party ... [demonstrate] ... (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest." *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555–556, 462 A.2d 637, 640 (1983).

8. The Philadelphia Planning Commission also appeared before the Board and submitted a letter into evidence strongly recommending

Based on the testimony presented, the Board granted Landowner's request for a variance to erect the signs finding that the requisite showing of undue hardship had been demonstrated and that all of the criteria under Section 14–1802(1) of the Code required to establish entitlement to a variance had been met. The Board also found that none of the Protestors had established their standing to oppose the grant of the variance because they did not demonstrate a substantial, direct and immediate interest in the matter. Protestors appealed the Board's decision to the trial court, which quashed their appeal. In quashing Protestors' appeal, the trial court found they had failed to demonstrate that they were specifically and particularly harmed or aggrieved by the granting of the variance because they did not live or represent anyone living in the vicinity of the proposed signs.[9] This appeal followed.[10]

The sole issue before us is whether the trial court erred in quashing Protestors' appeal based upon a lack of standing because the Board determined that they were not proper parties. Generally, persons having no real interest in a dispute are not considered to have standing to become parties to a proceeding, and zoning cases are no exception to this general rule. In most areas of the state, standing to become a "party" to oppose a variance sought by a property owner is governed by Section 908(3) of the Pennsylvania Municipalities Planning Code (MPC),[11] which sets forth who is entitled to become a "party" before the Board and, necessarily, appeal any adverse determination. Section 908(3) provides that:

> The parties to the hearing shall be the municipality, *any person affected by the application* who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. (Emphasis added).

To be considered a "person aggrieved", the person seeking to be a party before the Board is usually a business owner or property owner within the vicinity of the requested variance. *Active Amusement Co. v. Zoning Board of Adjustment*, 84 Pa. Cmwlth. 538, 479 A.2d 697 (1984); *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A.2d 692 (1960).

However, the provisions of the MPC, including Section 908(3), do not govern Philadelphia.[12] The corresponding provision governing the standard for Phila-

---

that the Board deny the variances. Philadelphia City Councilman Cohen, Councilwomen Fernandez and Sharing, and Commerce Bank also submitted letters of opposition.

9. Although its name appears in the caption, PIDC–FDC, Inc. did not participate in proceedings before the Board and did not appeal from the either the Board's or the trial court's decision. In fact, the record is devoid of any indication that PIDC–FDC, Inc. participated in these proceedings at all except for its name appearing in the caption. The trial court noted that, "while the PIDC–FDC, [Inc.] may well have standing to challenge the erection of these signs, [SCRUB] added this entity as a party to their appeal, without our leave, *after* the ... Board hearing. As the PIDC–FDC did not participate in the appeal below, we are unable to determine its position on the issues presented and can not [sic] rely on its inclusion in the case caption to confer *standing* on [SCRUB]." (Emphasis in original).

10. Where the trial court takes no additional evidence following a decision by the Board, our scope of review is limited to a determination of whether the Board committed an abuse of discretion or an error of law in granting a variance. *Young v. Pistorio*, 715 A.2d 1230 (Pa.Cmwlth.1998). Moreover, a decision to grant or deny a motion to quash an appeal is a question of law and, therefore, within this Court's scope of review. *Tierney v. Upper Makefield Township*, 654 A.2d 621 (Pa.Cmwlth.1995).

11. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(3).

12. Philadelphia is a "Home Rule" city and is the only first-class city in the Commonwealth. It conducts its affairs in accordance with the Philadelphia Home Rule Charter, 351. Pa. Code §§ 1.1–100–12.12–503, adopted pursuant to the General Assembly's enactment of the "First Class City Home Rule Act", Act of April 21, 1949, P.L. 665, *as amended by* the

delphia is contained in Section 14–1806(1) of the Code, which sets forth those that have standing to take an appeal from a decision of the Board and, necessarily, those who are to be considered parties before the Board. It provides a rather broad standard to be considered a party with standing to participate in proceedings before the Board or to have standing to appeal an adverse decision to the trial court. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of City and County of Philadelphia,* 682 A.2d 1 (Pa.Cmwlth.1996). Section 14–1806(1) of the Code provides in relevant part:

> Any *person or persons* jointly or severally *aggrieved* by any decision of the Board or *any taxpayer* ... may present to a Court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part, specifying the ground for that illegality. (Emphasis added).

As can be seen, while Philadelphia has the same "any person aggrieved" provision contained in Section 908(3) of the MPC, Section 14–1806(1) of the Code goes on to confer standing to any "taxpayer" in Philadelphia to challenge a decision of the Board. Protestors contend, among other things,[13] that they have standing, at the very least, because they are taxpayers or because their members are taxpayers of Philadelphia.

■ Not disputing that Protestors are taxpayers or that SCRUB and CCRA represent a group of Philadelphia taxpayers,[14] Landowner contends that Philadelphia cannot broaden who has standing in zoning legislation because access to the courts is a matter of statewide concern. While it is true that it cannot exercise any powers or authority beyond its city limits or grant statewide standing,[15] Philadelphia is not governed by the MPC and can promulgate any ordinance necessary to effectuate its

---

Act of June 1, 1995, P.L. 45, 53 P.S. §§ 13101–13157. This Act was promulgated pursuant to Article XV, Section 1 of the Pennsylvania Constitution of 1874, which provided:

> Cities or cities of any particular class may be given the right and power to adopt their local charters and to exercise the powers and authorities of local self-governments, subject however, to such restrictions, limitations and regulations as may be imposed by the legislature.

**13.** Protestors also contend that they are "persons aggrieved" and can challenge the Board's grant of Landowner's variance under the "zone of interest" test as well as the "private attorney general" theory of standing. For purposes of the standing requirement that a party have an immediate interest in the outcome of litigation, the interest that is sought to be protected will be immediate if it is within "zone of interest" that is protected by the statute or constitutional guarantee in question. *Ken R. v. Arthur Z.,* 546 Pa. 49, 682 A.2d 1267 (1996); *Jefferson Bank v. Newton Associates,* 454 Pa.Super. 654, 686 A.2d 834 (1996). The "private attorney general theory" is where one party who may not carry a substantial, direct or immediate interest in the subject matter of the litigation may be conferred with standing because he shares a common interest with citizens or taxpayers in general, *see Jones v. Muir,* 511 Pa. 535, 515

A.2d 855 (1986), and the only challenge to the action in question would derive from that taxpayer's intervention. *Rizzo v. City of Philadelphia,* 136 Pa.Cmwlth. 13, 582 A.2d 1128 (1990), *petition for allowance of appeal denied,* 527 Pa. 653, 593 A.2d 424 (1991), 527 Pa. 658, 593 A.2d 428 (1991) and 527 Pa. 659, 593 A.2d 429 (1991). Because of the way we have resolved this case, we will not address the merits of either of these claims of standing presented by Protestors.

**14.** Landowner does not contend that SCRUB does not have representational standing if its members also have standing, *see Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of the City of Pittsburgh,* 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1320 (1994) (group like Pittsburgh Trust has standing as representative of its members who were suffering immediate injury as a result of dispute without sustaining injury itself), but rather, because none of its members have standing, neither can SCRUB.

**15.** *See supra* text accompanying note 12. 53 P.S. § 13133 provides in relevant part:

> No city shall exercise any powers or authority beyond the city limits ... Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, pow-

zoning plan. *See Bartle v. Zoning Board of Adjustment*, 391 Pa. 207, 137 A.2d 239 (1958) (adoption of ordinance for execution of zoning plan within power granted under Home Rule Charter). In short, if the General Assembly wanted Philadelphia's procedures to be the same as those in other areas of the state, the General Assembly would not have excluded it from the provisions of the MPC, including Section 908(3)'s requirement that only those "aggrieved" have standing.

Landowner contends that even if Philadelphia is not precluded from enacting such legislation, for it to confer standing to parties other than those who meet the strict "person aggrieved" standard would be unconstitutional in violation of the separation of powers doctrine because Philadelphia would impinge on our Supreme Court's power to dictate civil procedure and would interfere with our Supreme Court's ability to determine who has standing to appeal from an administrative agency decision to the trial courts. Under this view, neither Philadelphia nor the General Assembly could confer statutory standing by setting forth in the legislation those who are aggrieved, i.e., those that have a right to bring a legal challenge.

■■■ However, our Supreme Court has never even suggested that it has the sole power to determine who has standing or that standing to challenge an administrative determination could not be conferred statutorily. In fact, recently, in *Pennsylvania Mutual Casualty Insurance Co. v. Department of Labor & Industry, Prevailing Wage Appeals Board*, 552 Pa. 385, ——, 715 A.2d 1068, 1071 (1998), our Supreme Court held that standing could be statutorily conferred stating that, "as a general proposition 'standing' is concerned only with the question of who is entitled to make a legal challenge to the matter involved.... *Standing may be conferred by statute* or by having an interest deserving of legal protection." (Citation omitted; emphasis added). Because it is within

Philadelphia's power to provide in Section 14–1806(1) of the Code that taxpayers have standing to challenge the actions of zoning officers, and Protestors are either taxpayers or organizations that represent Philadelphia taxpayers, *Pittsburgh Trust*, the trial court erred in affirming the Board's decision that Protestors did not have standing to participate in the proceedings and quashing their appeal.

Accordingly, the decision of the trial court quashing Protestors' appeal based upon a lack of standing is reversed and this case is remanded to the trial court for a determination of the merits of Protestors' appeal.

### *O R D E R*

AND NOW, this 5th day of April, 1999, the order of the Court of Common Pleas of Philadelphia County dated November 6, 1997, at Nos. 9703–0145, 9703–0148 and 9703–0150, is reversed and the case remanded to the trial court for a determination of the merits of Protestors' appeal.

Jurisdiction relinquished.

ers granted by acts of the general Assembly which are — ... (b) Applicable to every part of the Commonwealth. (c) Applicable to all cities of the Commonwealth[.]