Gary SPAHN, Appellant

v.

**ZONING BOARD OF ADJUSTMENT, The City of Philadelphia and R.G. Woodstock Associates, LLC (Two Cases).**

Commonwealth Court of Pennsylvania.

Argued March 5, 2007.
Decided April 4, 2007.
Reargument and Reconsideration Denied En Banc May 30, 2007.

Samuel C. Stretton, West Chester, for appellant.

Richard Feder, Philadelphia, for appellees, Zoning Board of Adjustment and the City of Philadelphia.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

This case involves the consolidated appeals of Gary Spahn (Spahn) from separate but identical orders of the Court of Common Pleas of Philadelphia County (trial court), granting the motion to quash filed on behalf of R.G. Woodstock Associates, LLC. (Woodstock) and dismissing Spahn's appeal for lack of standing. We now affirm.

Woodstock is the owner of two vacant lots located at 1630 and 1632 Bainbridge Street, Philadelphia, Pennsylvania. These lots are in an area zoned R–10 Residential District. In June of 2005, Woodstock filed two separate applications with the City of Philadelphia's Department of Licenses and Inspections (the Department) seeking to construct a three-story, single family dwelling on each respective lot.[1] However, the Department issued notices of refusal with respect to each permit application as a result of the failure of each dwelling to contain a "roofed over [front entry] porch" with "usable space underneath" and to meet certain open area requirements. (R.R. at 27a, 29a). Woodstock appealed to the Board again seeking a dimensional variance with respect to each lot. The Board conducted a hearing on August 17, 2005.[2]

---

1. In December of 2002, Woodstock had filed similar applications for the construction of a four-story, single family dwelling on each lot. The Department denied the permits for failure to comply with certain provisions of the Philadelphia Zoning Code (the Code). Woodstock appealed to the Zoning Board of Adjustment of the City of Philadelphia (the Board) and the Board granted Woodstock the necessary variances. Spahn, who lives approximately a block away from these properties and who testified in opposition before the Board, filed an appeal with the trial court. The trial court affirmed the decision of the Board. Spahn then filed an appeal with this Court. By decision and order dated April 29, 2005, and issued by Senior Judge McCloskey, we re-versed the decision of the trial court concluding that Woodstock failed to present sufficient evidence before the Board necessary for the grant of the variances, including evidence relating to hardship. *See Spahn v. Zoning Board of Adjustment*, 874 A.2d 178 (Pa. Cmwlth.2005).

2. Prior to the hearing, the neighbors adjacent to the subject properties as well as the South of South Neighborhood Association submitted letters to the Board in support of the application. Spahn submitted a letter in opposition. Spahn also testified in opposition at the hearing.

At this hearing, the parties and the Board initially agreed that the issue concerning the front entry porch was not an issue but rather was the result of a labeling/clerical error on the design plans. Hence, the matter proceeded solely on the issue of open area. The Philadelphia Zoning Code requires a minimum open area of 30% for lots in an area zoned R–10. The plans submitted by Woodstock only provided for an open area of approximately 19%. Following the hearing, the Board granted Woodstock a variance with respect to each lot. The Board concluded that Woodstock had presented evidence sufficient to meet the criteria necessary for a variance. Spahn thereafter filed separate appeals with the trial court. The trial court consolidated the appeals for purposes of disposition.

As these appeals were pending, Woodstock filed a motion to quash the same, alleging that Spahn was not an "aggrieved person" having standing to appeal the Board's decision. More specifically, Woodstock alleged that the General Assembly's addition of Section 17.1 of the First Class City Home Rule Act (Act)[3] on November 30, 2004, eliminated the general standing granted to any taxpayer under Section 14–1807 of the Code to appeal a decision of the Board.[4] Section 17.1 of the Act provides as follows:

In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.

The trial court agreed with Woodstock, concluding that Section 14–1807(1) of the Philadelphia Zoning Code was subordinate to the General Assembly's enactment of Section 17.1 of the Act. Hence, the trial court indicated that citizens of Philadelphia are no longer afforded standing to protest Board decisions merely based upon their status as taxpayers. As Spahn failed to present evidence establishing himself as an aggrieved party, the trial court further concluded that he did not have standing to prosecute the appeals. The trial court proceeded to quash Spahn's consolidated appeal. Spahn thereafter filed separate notices of appeal with the trial court.[5]

■ On appeal,[6] Spahn first argues that the trial court erred as a matter of law in concluding that general taxpayer

---

3. Act of April 21, 1949, P.L. 665, *as amended,* added by Section 2 of the Act of November 30, 2004, P.L. 1523, 53 P.S. § 13131.1.

4. Section 14–1807(1) of the Code provides the right of appeal to "[a]ny person ... aggrieved by any decision of the Board, or any taxpayer...."

5. These appeals are docketed at 1425 C.D. 2006 and 1426 C.D. 2006, respectively.

6. Our scope of review in a zoning case where the trial court takes no additional evidence is limited to determining whether the Board committed an abuse of discretion or an error

of law. *SPC Company, Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 773 A.2d 209 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 689, 796 A.2d 320 (2002). An abuse of discretion is found where the Board's findings are not supported by substantial evidence. *Id.* Moreover, a decision to grant or deny a motion to quash an appeal is a question of law within this Court's scope of review. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia (Procacci),* 729 A.2d 117 (Pa. Cmwlth.1999).

standing was eliminated by Section 17.1 of the Act and thereby quashing his appeal.[7] We disagree.

With respect to this argument, Spahn places heavy emphasis on Section 14–1807(1) of the Code as well as our previous decision in *Procacci,* wherein we confirmed the general taxpayer standing conveyed by the aforementioned Section.[8] Spahn proceeds to focus his argument on statutory construction and interpretation, averring that Section 14–1807(1) of the Code created two categories of individuals with the right to appeal a decision of the Board, any person aggrieved by that decision and any taxpayer in general. Spahn then avers that Section 17.1 of the Act was only meant to apply to the first category and did not apply in any manner to the second category, i.e., general taxpayers. We cannot agree with Spahn's construction and interpretation in this regard.[9]

To the contrary, we see no purpose of the language of Section 17.1 of the Act other than to limit the broad grant of general taxpayer standing provided in Section 14–1807(1) of the Code. Admittedly,

Section 17.1 expanded the authority of the governing body of a municipality to appeal a decision from a zoning hearing board or any other board or commission which seeks to regulate development. In addition to the governing body, Section 17.1 noted the ability of an "aggrieved person" to appeal such decisions. However, the General Assembly specifically limited the definition of an "aggrieved person" by excluding taxpayers of the city who are not "detrimentally harmed." In other words, we agree with the trial court that said language effectively eliminated the grant of general taxpayer standing provided in Section 14–1807(1) of the Code. Under Section 17.1, only a taxpayer with an interest that could be "detrimentally" affected by a decision of an entity such as the Board has standing to appeal. Thus, we cannot say that the trial court erred in this regard.[10]

■ Next, Spahn argues that Section 14–1807(1) of the Code supersedes Section 17.1 of the Act. More specifically, Spahn argues that Section 14–1807(1) of the Code involves a purely local issue of zoning, not

7. The City of Philadelphia filed a brief on behalf of the Board with this Court essentially agreeing with Spahn on this issue.

8. In *Procacci,* we noted that Section 14–1807(1) of the Code provided "a rather broad standard to be considered a party with standing to participate in proceedings before the Board or to have standing to appeal an adverse decision to the trial court." *Procacci,* 729 A.2d at 121. Further, we noted that the General Assembly had excluded the City of Philadelphia from the provisions of the Pennsylvania Municipalities Planning Code (MPC), including Section 908(3), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(3), which limits standing to persons aggrieved by the decision of a zoning hearing board.

9. We note that in a set of cases argued seriately with the present set of cases, i.e., *SCRUB, et. al. v. Zoning Board of Adjustment of the City of Philadelphia,* et. al., 921 A.2d

536 (Pa.Cmwlth.2007), we rejected this identical argument.

10. In the course of this argument, Spahn raises an additional issue concerning the creation of a new standard for an aggrieved person under Section 17.1 of the Act, i.e., the person must be "detrimentally harmed," which allegedly exceeds even the traditional standard necessary to be an "aggrieved party." However, we do not believe that the General Assembly's use of the phrase "detrimentally harmed" in Section 17.1 of the Act added to or detracted from the traditional notion requiring an aggrieved party to be "adversely affected." *See, e.g., Sparacino v. Zoning Board of Adjustment, City of Philadelphia,* 728 A.2d 445 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 565 Pa. 680, 775 A.2d 811 (2001) (a party is aggrieved when he is adversely, directly, immediately and substantially affected by a decision).

a matter of statewide concern, which is not subject to amendment by the General Assembly. Again, we disagree.

■ As we noted in *City of Philadelphia v. Schweiker*, 579 Pa. 591, 605, 858 A.2d 75, 84 (2004), "[m]unicipalities are creatures of the state and have no inherent powers of their own." Moreover, "a municipality ordinarily lacks the power to enact ordinances except as authorized by statute...." *Id.* Under the concept of home rule, however, the municipality's governing powers include the right to enact such ordinances. Article IX, Section 2 of the Pennsylvania Constitution guarantees municipalities "the right and power to frame and adopt home rule charters" subject to the limitations imposed by the "Constitution ... its home rule charter or by the General Assembly at any time." The city of Philadelphia opted for such home rule, adopting its home rule charter on April 17, 1951.[11]

This home rule charter was adopted under the terms of the Act, commonly referred to as the enabling legislation. Section 1 of the Act, 53 P.S. § 13101, permits any city of the first class, such as Philadelphia, to "frame and adopt a charter for its own government...." Section 17 of the Act describes the general powers and authority of a city opting for home rule, including "complete powers of legislation and administration in relation to its municipal functions...." However, Section 18 of the Act, 53 P.S. § 13133(b), (c), provides limitations with respect to these powers, including that "no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are ... [a]pplicable in every part of the Commonwealth" and "[a]pplicable to all the cities of the Commonwealth...."

Our Supreme Court has interpreted the above provisions as permitting the General Assembly, by constitutional mandate, to "limit the functions to be performed by home rule municipalities." *Ortiz v. Commonwealth*, 545 Pa. 279, 285, 681 A.2d 152, 156 (1996). However, our Supreme Court has placed limits on the extent of this constitutional mandate, only permitting the General Assembly to negate ordinances enacted by a home rule municipality when the General Assembly's conflicting statute concerns substantive matters of statewide concern, as opposed to matters which merely affect the personnel and administration of the municipality's offices and which are of no concern to citizens elsewhere. *See Ortiz; Commonwealth v. Bellis*, 508 Pa. 122, 494 A.2d 1072 (1985); *Cali v. Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962). Moreover, in *Cali*, our Supreme Court stated that "the Charter is subordinate to the Enabling Act, and if they conflict the Enabling Act takes precedence and prevails." *Cali*, 406 Pa. at 312, 177 A.2d at 835.

In this case, Section 17.1 of the Act, the enabling act for the city of Philadelphia's home rule charter, specifically limited the ability of general taxpayers within the city to appeal the decision of the zoning hearing board, requiring that such taxpayers be detrimentally harmed by the decision of said board. Although this statute directly conflicts with a local ordinance, namely Section 14–1807(1) of the Code, we believe that the rationale enunciated by the Court in *Cali* stands and the statute prevails. Furthermore, we reject Spahn's attempts to characterize this issue as merely a local issue of zoning. To the contrary, this issue involves access to the courts, a concern for every citizen if this Commonwealth.

---

11. The Philadelphia Home Rule Charter became effective as of January 7, 1952, and the same is currently codified at 351 Pa.Code §§ 1.1–100–12.12–503.

Admittedly, Section 908(3) of the MPC governs this issue with respect to all individuals outside of Philadelphia, limiting standing to persons aggrieved by the decision of a zoning hearing board. We believe that the General Assembly's enactment of Section 17.1 of the Act was simply an attempt to apply this standard equally to every citizen of the Commonwealth.

■ Next, Spahn argues that Section 17.1 of the Act was unconstitutional as it violated the single-subject rule. More specifically, Spahn argues that the bill which eventually became Section 17.1 of the Act contained two unrelated subjects, an increase in penalties and forfeitures for violations of the Code and removal of taxpayer standing. Again, we disagree.

■ Article III, Section 3 of the Pennsylvania Constitution provides that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." Our Supreme Court explained the rationale underlying Article III, Section 3 in *Pennsylvanians Against Gambling Expansion Fund v. Commonwealth*, 583 Pa. 275, 296, 877 A.2d 383, 396 (2005), wherein the Court stated as follows:

> More specifically, Section 3 was designed to curb the practice of inserting into a single bill a number of distinct and independent subjects of legislation and purposefully hiding the real purpose of the bill. Related thereto, the single subject requirement prohibits the attachment of riders that could not become law as is, to popular legislation that would pass. An additional benefit of the Section 3 requirements is that there will be a greater probability that a bill containing a single topic will be more likely to receive a considered review than a multi-subject piece of legislation.

Additionally, in *Pennsylvanians Against Gambling Expansion Fund,* the Court noted that there is a strong presumption in the law that legislative enactments do not violate our Constitution. This includes the manner by which legislation is enacted. *Id.* Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Id.* All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. *Id.* Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Id.*

■ Further, the Court in *Pennsylvanians Against Gambling Expansion Fund* acknowledged that bills proceeding through the legislative process are frequently amended and not every addition to a bill is violative of our Constitution. Thus, "where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title," the requirements of Article III, Section 3 are met. *Pennsylvanians Against Gambling Expansion Fund,* 583 Pa. at 296, 877 A.2d at 395 (citing *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 575, 838 A.2d 566, 587 (2003)).

In the present case, we agree with Woodstock that Spahn's argument in this regard confuses subject for content. Contrary to Spahn's argument, the bill at issue did not involve two, unrelated subjects. Rather, the bill encompassed merely one subject, i.e., an amendment to the Act. The content within this bill did address more than one issue, including the increase in penalties and forfeitures for violations of the Code as well as standing. With respect to standing, the language of the bill enlarged the standing afforded to governing bodies. The lan-

guage of the bill noted the traditional standing afforded to an aggrieved party and further provided a definition of such an "aggrieved" party. Admittedly, this definition resulted in a limiting effect as to the general taxpayer standing provided in the Code. However, this language is germane to the subject of the bill.[12] Thus, we cannot say that that Section 17.1 of the Act was violative of the single-subject rule under Article III, Section 3 of our Constitution.

■ Finally, Spahn argues that the trial court erred as a matter of law in failing to conclude that he had standing under the traditional notion of an "aggrieved" party. Once more, we disagree.

■ As noted above, a party is traditionally "aggrieved" when he has an adverse, direct, immediate and substantial interest in a decision, as opposed to a remote and speculative interest. *Sparacino; Society Hill Civic Association v. Philadelphia Board of License & Inspection Review*, 905 A.2d 579 (Pa.Cmwlth.2006). A substantial interest "is one that surpasses the common interest of all citizens in procuring obedience to the law." *Society Hill Civic Association*, 905 A.2d at 586. A direct interest "requires a showing that the matter complained of has caused harm to a party's interest," and an immediate interest "involves the nature of the causal connection between the action complained of and the injury to the party challenging it." *Id.*

In the present case, the evidence of record reveals that Spahn lives approximately one and a half blocks away from the properties being developed by Woodstock but walks by the same on a daily basis. At the hearing before the Board,

when questioned as to his objections, Spahn merely indicated that he was "against this particular project because it undermines the ability of the City of Philadelphia to oversee orderly development of the City...." (R.R. at 83a). Spahn thereafter noted the burden of proof required of Woodstock in order to obtain a variance. Upon questioning by counsel for Woodstock as to the bases for his objection, Spahn essentially indicated that he picks and chooses the cases he gets involved with carefully and that counsel had "won the lottery" with the present case. (R.R. at 91a).

Based upon this testimony and the evidence of record, it appears that Spahn was asserting no interest in this case other than the interest common to all citizens regarding obedience to the law. Thus, we cannot say that the trial court erred as a matter of law in failing to conclude that Spahn had standing under the traditional notion of an "aggrieved" party.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 4th day of April, 2007, the order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

CONCURRING OPINION BY Judge SIMPSON.

I concur in the result reached by the majority. I write separately, however, because I question the constitutionality of Act 193 of 2004, which amended the law known as the First Class City Home Rule Act (Home Rule Act)[1] by adding Section 17.1, and which seems to eliminate taxpay-

12. Moreover, this language was ultimately encompassed within Section 17.1 of the Act, which deals exclusively with the issue of standing.

1. Act of April 21, 1949, P.L. 655, *as amended*, 53 P.S. §§ 13101–13157.

er standing in zoning matters in Philadelphia, contrary to the express provisions of The Philadelphia Code.[2]

In particular, I question whether the title of Act 193 violates the "clear expression of title" requirement of Article III, Section 3 of the Pennsylvania Constitution.[3] In this regard, I entirely agree with the official opinion of the City Solicitor for the City of Philadelphia, and with the argument of Appellees Zoning Board of Adjustment and the City of Philadelphia. However, I cannot find that these arguments were raised before the trial court, and I conclude they are not preserved here.

Also, I question whether Act 193 violates the right of local self-government protected by the Pennsylvania Constitution, Article IX, Section 2,[4] and by the Home Rule Act. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment, City of Phila.*, 417 Pa. 277, 207 A.2d 864 (1965) (zoning is peculiarly a local matter, and prohibition imposed on municipality by Home Rule Act against exercise of powers contrary to, or in limitation of, other acts of General Assembly applies only to substantive matters of statewide concern); *Bartle v. Zoning Bd. of Adjustment*, 391 Pa. 207, 137 A.2d 239 (1958) (same). While this issue was mentioned in a pleading before the trial court, it was not briefed, and therefore it was not preserved for our current review.

It is also worth noting that the manner of amending and ultimately passing Act 193 was highly questionable, and would not comply with new procedural rules in the state House of Representatives. Notwithstanding these concerns, I reluctantly concur in the limited result reached by the majority.

---

**2.** Section 14–1807(1) of The Philadelphia Code provides for standing to appeal decisions of the Zoning Board of Adjustment.

**3.** Article III, Section 3 of the Pennsylvania Constitution, titled "Form of Bills," provides:

> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

PA. CONST. art III, § 3. This provision sets forth dual mandates for the Legislature; it prohibits the passing of a bill that contains more than one subject and requires that the subject be clearly expressed in its title. *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918 (2006). In broad terms, Article III endeavors to place restraints on the legislative process and to encourage an open and accountable government. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005) (hereinafter *"PAGE"*). Section 3 curbs the practice of incorporating a variety of distinct and independent subjects into one bill. *Id.* "[R]eason-

able notice is the keystone of Article III, Section 3." *Id.* at 296, 877 A.2d at 395.

Although Article III, Section 3 mandates that a bill's subject be set forth in its title, it does not require a title to be an index or a synopsis of the bill's contents. *PAGE.* A party seeking to declare a title unconstitutional under Article III, Section 3's "clear expression of title" requirement must show "either (1) that the legislators and the public were actually deceived as to the act's content at the time of passage, or (2) that the title on its face is such that no reasonable person would have been on notice as to the act's contents." *Id.* at 313, 877 A.2d at 406 (citation omitted).

**4.** The so-called "Home Rule Amendment" to the Pennsylvania Constitution provides in part that:

> Municipalities shall have the right and power to frame and adopt home rule charters. . . . A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

PA. CONST. of 1968, art. IX, § 2.