44

# Gargiolo v. City of Philadelphia Zoning Board of Adjustment

*Stephanie Kindt,* for appellant.

*Andrew S. Ross,* for appellee Philadelphia Zoning Board.

*Leslie M. Gerstein,* for appellee Intervenors H.A. Steen Industries, Inc.

*George J. Kroculick,* for appellee Intervenors CBS Outdoor and Clear Channel Outdoor.

TUCKER, *J.,* August 8, 2013—

## I. PROCEDURAL HISTORY & FACTS

This matter comes before the court on the grant of Intervenors H.A. Steen Industries, Inc.'s, CBS Outdoor Group's and Clear Channel Outdoor's Inc.'s (hereinafter referred as "Intervenors" and alternatively as "sign owners") motion to quash Scenic Philadelphia's zoning agency appeal. Mot. to quash (02/25/2013). The court granted Intervenors' joint motion to Quash Scenic Philadelphia's zoning agency appeal due to Scenic Philadelphia's (hereinafter referred to as "Scenic") lack

46

of standing to bring the instant appeal in the Philadelphia Court of Common Pleas. Scenic timely appealed the Court's ruling to the Commonwealth Court on May 17, 2013. Appeal to Commonwealth Court (05/17/2013). The court ordered Scenic to file of record a concise statement of matters complained of pursuant to Pa.R.A.P. 1925(b) ("1925(b) statement"). Order entered by J. Tucker (05/21/2013). The court will not reproduce the 1925(b) statement as per its usual custom. A discussion ensues:

The facts and record in this matter are extensive. Sometime in 2007, the Pennsylvania Department of Transportation ("PennDOT") unveiled its long-term plan to widen and rebuild United States Interstate 95 (hereinafter "I-95"), which runs through sections of Philadelphia. Mot. to quash (02/25/2013). PennDOT's project would require the taking of numerous outdoor advertising signs dotted alongside I-95. *Id.* In an effort to prevent a taking and the attendant economic impact of a taking on the Commonwealth and the City of Philadelphia, the City of Philadelphia drafted an ordinance to allow the owners of the advertising signs to keep their property by relocating the advertising signs beyond the right of way of the PennDOT I-95 expansion project. *Id.* The ordinance draft was approved by the sign owners, the mayor of the City of Philadelphia, City Council of Philadelphia, the City of Philadelphia Law Department and PennDot for compliance with the Philadelphia Code and the Federal Highway Beautification Act. *Id.* The ordinance established a new process to apply for and obtain a permit to relocate signs affected by the expansion project. Mot. to quash (02/25/2013); Certified record (01/23/2013)(Philadelphia,

PA, Philadelphia Code §14-1642 ("I-95 Condemnation Corridor"), Bill No. 100678, introduced October 21, 2010). In June of 2011, the ordinance was approved by the City Council of Philadelphia and signed into law by the Mayor of Philadelphia. *Id.*

By the fall of 2011, the sign owners were notified that the advertising signs needed to be relocated out of the path of the expansion project by January 2012. *Id.* The instant matter concerns three (3) outdoor advertising signs. The three (3) advertising signs are located on the east side of I-95, on the Conrail yard on Richmond Street in Philadelphia. Mot. to quash (02/25/2013). The sign owners and Conrail submitted permit applications to the Philadelphia Department of Licenses & Inspections ("L&I") for permission to relocate the signs. *Id.* On April 12, 2012, L&I approved the permit applications and issued zoning permits for the demolition and relocation of the three (3) outdoor advertising signs. Certified record (01/07/2013)("Findings of Fact"). L&I also issued permits for the use of the outdoor signs for advertising. Certified record (01/07/2013)("Findings of Fact").

On May 9, 2012, Stephanie Kindt, Esq., General Counsel of Scenic, formally Society Created to Reduce Urban Blight ("SCRUB"), filed an appeal of the issuance of the zoning permits to the Philadelphia Zoning Board of Adjustment ("ZBA") on behalf of Scenic as an organization and "its members residing in the Olde Richmond and New Kensington CDC neighborhoods." Certified record (01/07/2013)("Findings of Fact"). The sign owners requested permission to intervene in the ZBA

48

hearings; this request was granted and a public hearing was held before the ZBA on June 13, 2012.[1] *Id.* The ZBA ultimately upheld the issuance of the zoning permits. *Id.*

In regards to the ZBA hearing, the court notes the following facts: First, the June 13, 2012 hearing was restricted to the issue of whether L & I issued the permits in accordance with the subject ordinance, which is codified at Philadelphia Code §14-1645. Certified record (01/07/2013)("Findings of Fact"). Second, the ZBA heard a consolidated appeal on three permits related to three signs; however, the ZBA issued three separate rulings ultimately upholding the issuance of the permits. *Id.* Third, Scenic's standing to bring an appeal before the ZBA was challenged by standing objection of both the Intervenors and the City of Philadelphia. *Id.* The ZBA left the issue of Scenic's standing "unresolved;" however, the record is clear that Scenic was prevented from putting forth evidence and cross-examining witnesses at the June 2012 ZBA hearing. *Id.* ("Findings of Fact")("Notes of Testimony"). Instead, Scenic was limited to giving testimony in the form of statements. *Id.*

On July 13, 2012, Scenic commenced the instant appeal in the Philadelphia County Court of Common Pleas. Commencement by appeal (07/13/2012). The court notes that Scenic filed the instant appeal on behalf of

---

1. H.A. Steen Industries, Inc., CBS Outdoor Group and Clear Channel Outdoor own the subject outdoor advertising signs. H.A. Steen Industries, Inc., CBS Outdoor Group and Clear Channel Outdoor are in the business of building, maintaining and leasing outdoor advertising signs to local and national advertisers. Mot. to quash (02/25/2013). CBS Outdoor is the agent of Conrail, landowner on which the three signs are located. Certified record (01/07/2013)("Findings of Fact").

Scenic the organization and five (5) individuals. *Id.* The Intervenors intervened as of right in this matter by praecipe. Praecipe to intervene (07/24/2012); Praecipe to intervene (08/10/2012); Praecipe to intervene (08/10/2012). After the scheduling order in this matter was modified to allow additional time to file briefs, this matter was listed for oral arguments. Order entered by J. Tucker (02/01/2013); listed for oral arguments (02/01/2013). On February 25, 2013, Intervenors filed the instant motion to quash Scenic's appeal. Mot. to quash (02/25/2013). Scenic filed its answer to the motion to quash and the court issued a rule to show cause why Intervenor's requested relief should not be granted. Ans. (Mot./pet. filed)(03/19/2013); rule issued (03/22/2013). The rule was returnable on April 17, 2013. N.T. (04/17/2013). The court did not take additional evidence at the rule hearing. At the conclusion of the rule, the court granted Intervenors' motion to quash and dismissed Scenic's appeal with prejudice due to Scenic's lack of standing to bring the appeal. Order entered — final disp. (04/18/2013).

## II. LEGAL ANALYSIS

The court properly granted Intervenors' motion to dismiss Scenic's appeal due to Scenic's lack of standing.

### 1. Governing Principals — Standing

The issue in this matter is rather straightforward: does Scenic as an organization have standing to appeal the ZBA's June 2012 decision to uphold the issuance of three zoning permits by L&I? To be clear, the court quashed the instant appeal due to Scenic's lack of standing

to bring the appeal; other so called charges of error against this court unrelated to the issue of standing are irrelevant. 1925(b) statement (05/21/2013)(stating that the court erred in granting motion to quash based on the filing of an untimely brief). The court does not view the underlying legal principals here to be complex. Where complexity arises, it does so due to the way Scenic has sought to involve itself in this matter. However, the court will begin its analysis with an overview of the evolution of standing as it relates to zoning hearing appeals in the Commonwealth of Pennsylvania and Philadelphia to aid its discussion of why Scenic does not have standing to bring the instant appeal.

Standing is the requirement that the person bringing an action be adversely affected by the matter they seek to challenge to assure that they are an appropriate party to bring the matter to a judicial resolution. *Pennsylvania Game Commission v. Dept. of Environmental Resources*, 555 A.2d 812 (Pa. 1989); *Robinson Tp. v. Com.*, 52 A.3d 463 (discussing standing as it relates to a municipality, council members, landowners, an environmental association, and a medical doctor in regards to a constitutional challenge to legislation regulating oil and gas operations in the Commonwealth). Not only has the notion of standing evolved as it relates to zoning issues, but the issue of standing has a particular meaning as it relates to zoning issues in the City of Philadelphia. As discussed below, in Philadelphia, both individuals and organizations must demonstrate that they have standing to challenge zoning actions.

In 1992, the Commonwealth Court of Pennsylvania analyzed and applied the now well-known factors for determining standing to challenge the validity of government action in *Pittsburgh Trust for Cultural Resources v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 604 A.2d 298 (Pa. Cmwlth. 1992). The court in *Pittsburgh Trust* stated:

> Our Supreme Court has consistently held that, in order to have standing to challenge the validity of governmental action, one must generally have a substantial, direct, and immediate interest in the claim sought to be litigated. A substantial interest is one in which there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." A "direct" interest requires a showing that the matter complained of causes harm to the party's interest. An "immediate" interest is something more than a "remote consequence" and centers on the causal nexus and proximity between the action complained of and the injury to the party challenging it. The requirement that the interest be "immediate" is also met where it falls within the "zone of interests sought to be protected by the statute or constitutional guarantee in question." Finally, the rationale underlying the requirement that the party be "aggrieved" or "adversely affected" by the action at issue is to ensure that a legal challenge is made by the appropriate party.

*Pittsburgh Trust*, 604 A.2d at 303-304 (citations omitted). *Pittsburgh Trust* is significant because the Commonwealth

52

Court affirmed the trial court's determination that an association and trust had standing to appeal a variance issued by the City of Pittsburgh which allowed the construction of an amusement facility in a historic district. *Id.* at 303-305. In making its decision that trust had standing to challenge the issuance of the variance, the trial court considered the trust's financial investment in the subject historic district and the trust's "fundamental commitment of nurturing cultural activity in an area ostensibly protected from proliferation of amusement arcades by the [variance]." *Id.* at 304. In making its decision that the association had standing to challenge the issuance of the variance, the trial court considered the association's mission statement and because the association represented members suffering "immediate or imminent injury because of the disputed action." Thus, *Pittsburgh Trust* stood for the proposition that an organization's mission statement and representation of members who were injured gave the organization itself standing in zoning matters.

Shortly thereafter, in a separate case specific to the City of Philadelphia, the Commonwealth held that: 1) where no objection is made to an organization's standing before the zoning hearing board, that issue is waived on appeal in the court of common pleas; and 2) that the Philadelphia Code provides for broad standing to "any persons or persons" aggrieved by a decision of the ZBA. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of the City of Philadelphia (Revere)*, 682 A.2d 1 (Pa. Cmwlth. 1996)(vacating and remanding back to court of common pleas for disposition).

In 1999, the Commonwealth Court presided over a Philadelphia zoning case where appellant therein, Scenic's predecessor, SCRUB, challenged a landowner's request for a variance. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Philadelphia (Procacci)*, 729 A.2d 117, 120 (Pa. Cmwlth. 1999). In *Proccacci*, SCRUB's then president and founding member testified as both an individual and on behalf of SCRUB; no residents or other aggrieved individuals participated in the proceeding before the ZBA. *Id.* Nevertheless, the court in *Proccacci* held that pursuant Philadelphia's broad taxpayer standing provisions, the lower court erred in quashing SCRUB's zoning appeal for lack of standing. *Id.* at 121-122 (comparing and contrasting the narrow zoning standing provisions of the Municipalities Planning Code with the broad taxpayer zoning standing provisions of the Philadelphia Code).

The law governing standing in Philadelphia Zoning appeals remained the same until 2004, when an amendment to the Pennsylvania Home Rule Act[2] narrowing the test for standing in zoning hearing appeals in Cities of the First Class, namely the City of Philadelphia, became effective. 53 P.S. §13131.1; *See Society Created to Reduce Urban Blight v. Zoning Bd. Adjustment (Preston)*, 908 A.2d 967

---

2. Section 17.1 of the Home Rule Act provides that "[i]n addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development." 1949, April 21, P.L. 665 §17.1, added 2004, Nov. 30, P.L. 1523, No. 193 §2, imd. effective.

54

(Pa. Cmwlth. 2006)(declining to apply the Home Rule Act retroactively to a zoning appeal that commenced prior to the effective date of the amendment).

In 2009, the Supreme Court of Pennsylvania formally outlined the standing requirements for Philadelphia zoning hearing proceedings pursuant to the 2004 amendment to the Home Rule Act in *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132 (Pa. 2009). The court in *Spahn* established the following principles: 1) the Pennsylvania General Assembly's amendment to the Home Rule Act, known as Section 17.1, governs the issue of standing in Philadelphia zoning hearing proceedings; 2) a party must establish that they are an "aggrieved person" under Section 17.1; and 3) "aggrieved person" has a particular meaning under the law pursuant to the *William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975). *Spahn*, 977 A.2d at 1149-1153. Specifically, the court in *Spahn* stated:

> Under *William Penn*, a party is aggrieved if the party can show an interest that is substantial, direct, and immediate. In order to be substantial, there must be some discernible effect on some interest other than the abstract interest all citizens have in the outcome of the proceedings. In order to be direct, the party must show some causation of harm to his interest. In order to be immediate, there must be a causal connection between the action complained of and the injury to the person challenging it.

*Id.* at 1151-1152 (citations omitted); *Pittsburgh Trust*, 604 A.2d at 303-304.

Applying these principles, the court in *Spahn* held that civic associations failed to establish that they were "aggrieved" under Section 17.1 and *William Penn*, despite their laudable organizational mission and purpose. *Spahn*, 977 A.2d at 1152-1153. In addition, the court in *Spahn* held that the civic associations' members failed to establish that they had standing under Section 17.1 and *William Penn*. *Id. Spahn* represents, then a departure from the broad organizational standing requirements of *Pittsburgh Trust*. The court finds the principles outlined in *Spahn* as binding on this court, where as here, Scenic is seeking to challenge the issuance of zoning permits in the City of Philadelphia.

As a threshold matter, the issue of standing is properly before this court because the issue was preserved at the zoning hearing. *Society Created to Reduce Urban Blight (Revere)*, 682 A.2d at 3. On May 9, 2012, Scenic appealed L&I's issuance of permits to Intervenor's "on behalf of Scenic [ ], and members residing in the Olde Richmond and New Kensington CDC neighborhoods...." Certified record (01/23/2013)(Pt. 21). A ZBA hearing was held on June 13, 2012; all Intervenors before this court intervened before the ZBA. *Id.* The City of Philadelphia also entered its appearance on behalf of the city and L& I at the June 13, 2012 ZBA hearing. *Id.* (Pt. 5-7 "Notes of testimony").

From the outset, the attorney for the city and L&I requested clarification of Scenic's role in the appeal; specifically, counsel requested that the "members" residing in the community be identified for the record. *Id.* (NT. (06/13/2012) at 3). After completing direct examination of the city and L&I's witness, the ZBA called

for cross-examination. *Id.* (NT. (06/13/2012) at 6). At this point, the ZBA inquired as to the role of Scenic and its two attorneys, to which Scenic's attorney responded that she was representing six (6) individuals as well as Scenic as an organization. *Id.* After establishing that the six (6) individuals were not present at the hearing, the ZBA determined that since the individuals were not present, Scenic's attorney could not cross-examine witnesses presented by the city, L&I or Intervenors.[3] *Id.* (NT. (06/13/2012) at 7-9). The city, L& I and Intervenors proceeded to call additional witnesses for direct examination. *Id.* (NT. (06/13/2012) at 10-16). The ZBA spent the remainder of the hearing essentially ruling on the Intervenors' objections to Scenic's attempt to testify about matters not before the ZBA. *Id.* (NT. (06/13/2012) at 26-34). Scenic was not allowed to make a closing statement. *Id.* (NT. (06/13/2012) at 32).

Despite the ZBA's statement in its findings of fact and conclusions of law that "the issue of standing was left unresolved," it is clear from the record that the ZBA ruled, upon objection, that Scenic did not have standing at the public hearing. Scenic was prevented from cross-examining witnesses; testifying on behalf of the six "individuals" it claimed to represent; and making a closing statement. Certified record (01/23/2013) (NT. (06/13/2012). Lastly, the court notes that even if the issue of standing before the ZBA was left "unresolved," standing before *this court*

---

3. In response to the ZBA's question of why the individuals were not present at the hearing, Scenic's attorney replied "My *witnesses* have day jobs. It's very difficult for them to come." N.T. (06/13/2012) at 9(emphasis added). The court notes that one of the "witnesses" was actually an intern working for Scenic. *Id.* at 8.

is properly at issue. *Baker v. Zoning Hearing Bd. of West Goshen Tp., Chester County*, 367 A.2d 819 (Pa. Cmwlth. 1976)(distinguishing between standing to appear before a zoning hearing board and standing to appear before a court); N.T. (04/17/2013) at 30. Therefore, the issue of Scenic's standing is properly before this court.

2. Scenic did not establish its standing to bring the instant appeal

Turning to the instant matter, there are two (2) reasons that Scenic does not have standing to bring the instant appeal. Although an organization may have standing to appeal a zoning issue to the Philadelphia Court of Common Pleas, such organization must establish standing either through its members or through the organization itself.

First, Scenic and its members must demonstrate that they have a substantial interest, that is, a discernible effect of L&I granting Conrail and Intervenors permits to move advertising signs on some interest other than the abstract interest all citizens have in the outcome of the proceedings. *Spahn*, 977 A.2d at 1151-1152. Second, Scenic and its members must demonstrate that they have a direct interest, which is some causation of harm to their interests by the grant of permits to relocate advertising signs. *Id.* Third, Scenic and its members must demonstrate that their interest is immediate, which is that there is a causal connection between the grant of permits to move advertising signs and some injury or harm to Scenic and its members. *Id.* Here, Scenic has failed to establish standing under the principles of *Spahn* and *William Penn* either through: (a) its members and constituents; or (b)

through the organization itself.

a. Scenic failed to establish that it's "members" are "aggrieved" under the principles of Spahn and William Penn.

To be clear, an organization's members may have standing to participate in zoning hearing appeals in Philadelphia. *Spahn,* 977 A.2d at 1149-1153. Where an organization's members have standing to participate in zoning hearings, the organization itself has standing to participate in zoning hearings *as a party along with its members. Id.* at 1150, 1152. However, the organization must demonstrate that its members indeed have standing pursuant to *Spahn* and *William Penn,* namely that its members are "aggrieved." *Id.*

Here, Scenic and its members are challenging the grant of the permits to relocate advertising signs for the following reasons: 1) they claim that the permit applications do not clearly delineate which signs are to be relocated ; 2) they believe that the property where the signs *are to relocated* is overused; 3) the signs are *currently* located too close to Interstate 95 in violation of the Federal Highway Beautification Act; 4) they believe the property where the signs are to be relocated *currently* has too much advertising per square foot; and 5) finally, that the ordinance allowing the relocation of the signs is somehow unconstitutional because the permit applications provide an address for only one of the signs and not all three of the signs. Certified record (01/23/2013)("N.T. (06/13/2012)(20-22, 25). The court includes Scenic's arguments here only to discern its "interest" in the instant

appeal; the court did not make a determination as to the merits of any of these claims. Scenic states that Scenic as an organization has standing to bring the instant appeal "because its members [ ] have standing, and because the issue in question is directly on point with [Scenic's] stated mission." 1925(b) statement (05/21/2013).

First, Scenic failed to establish that its members have a substantial interest in this matter. The record is clear that the Scenic members live less than a mile away from at least one of the signs for which a relocation permit was granted; this translates to several hundred feet between the signs and the homes of Scenic members. Certified record (01/23/2013)("Pt. 8"); N.T. (04/17/2013) at 21. The record is also clear that I-95, an eight lane highway, separates the Scenic members from the advertising signs. *Id.* In addition, the record is clear that the three signs which are the subject of this appeal will be moved *further away* from the Scenic members' homes; indeed the signs are being moved between twenty-five (25) and thirty (30) feet east of their existing location, which, as Scenic points out in the materials submitted to the ZBA, is .27 miles from the Delaware Waterfront. Certified record (01/23/2013)("Pt. 8 — Maps"); N.T. (04/17/2013) at 14-15). The record is clear that the three relocated signs will be the same height as the existing signs. Certified record (01/23/2013)(N.T. (04/17/2013) at 14-15).

The record is clear that none of Scenic's members appeared at the ZBA hearing scheduled to resolve their appeal; according to their attorney, none of the members could attend the appeal hearing because all of the

members have "day jobs." Certified record (01/23/2013) (N.T. (06/13/2012) at 9-10). Because the ZBA could not establish the standing of the members, Scenic's attorneys were limited to providing public comment without the right to testify or cross-examine witnesses. The court considered the certified record of the ZBA appeal hearing as complete.

The record is also clear that none of Scenic's members appeared at the motion to quash hearing before this court. N.T. (04/17/2013); according to their attorney, none of the appellants could attend the motion to quash hearing because they are from a "working class neighborhood," and because they shouldn't have to take off work to "attend a hearing over something that should have been taken care of in terms of just following the City's Zoning Code." *Id.* at 22. Due to the absence of the very members on which Scenic seeks to base its standing, the court simply heard oral argument on the motion to quash. *Id.* at 1-33. Simply put, Scenic failed to demonstrate that its members have a substantial interest, that is, a discernible effect of L&I's decision to grant Conrail and Intervenors permits to move advertising signs further away from their respective properties. Scenic's members' interest in this regard is no greater than the abstract interest all citizens have in the outcome of the instant proceedings. *Spahn*, 977 A.2d at 1151-1152.

Second, Scenic failed to demonstrate that its members have a direct interest, which is some causation of harm to their interests by the grant of permits to relocate advertising signs. *Id.* Scenic has failed to establish that

there is some causation of harm to any interest in L&I's decision to grant permits to relocate outdoor advertising signs further away from its members' properties. *Spahn*, 977 A.2d at 1151-1152; certified record (01/23/2013) ("Pt. 8 — Maps"); N.T. (04/17/2013) at 14-15. Again, the court notes that the signs will be the same height as the existing signs. Certified record (01/23/2013)("Pt. 8 — Maps"); N.T. (04/17/2013) at 14-15. Scenic's members have not shown a direct interest in this matter.

Third, and last, Scenic failed to demonstrate that its members have an immediate interest, which is a causal connection between the grant of permits to move advertising signs and some injury or harm to Scenic and its members. *Id.* Scenic has not established that its members suffered some injury or harm under the facts of this case. Therefore, Scenic has not established that there is a causal connection between the grant of permits and some perceived harm. It follows then, that Scenic has not established that any of its members have any interest in the instant proceedings that is immediate. Scenic did not establish that its members have a substantial, direct and immediate interest in L&I's issuance of a variance under the facts of this case.

b. Scenic failed to establish that Scenic as an organization is "aggrieved" under the principles of Spahn and William Penn.

Scenic makes the novel argument that it has automatic standing to bring this appeal as an organization because the issues in this matter are "directly on point" with Scenic's mission statement. 1925(b) Statement (05/21/2013).

62

Organizations may have standing to participate in zoning hearing appeals in Philadelphia. *Spahn*, 977 A.2d at 1149-1153. Indeed, pursuant to the Philadelphia Code[4], "[i]t is the policy of the [City] Council to protect the interests of community and neighborhood groups and organizations and to make available to such groups and organizations access to the courts where such groups and organizations seek to protect their interests under this Title." Philadelphia Code 14-1807(7).

However, pursuant to *Spahn* and *William Penn*, organizations still have to demonstrate that they are "aggrieved." *Spahn*, 977 A.2d at 1149-1153; Philadelphia Code 14-1807(7)(c). Organizations usually meet this standard by demonstrating that its *members* have standing, which as explained above, Scenic failed to do. *Robinson Tp.*, 52 A.3d at 475 (explaining that while organization standing is cognizable, it is necessary for an organization to show "that at least one member has suffered or is threatened with suffering a "direct, immediate, and substantial injury to an interest as a result of the challenged action"").

Here, Scenic has not demonstrated that it is "aggrieved" in that Scenic, the organization, has an interest in this matter that is substantial, direct, and immediate. First, Scenic, operating as a non-profit organization, has not demonstrated that it has an interest in L&I's issuance of zoning permits to Conrail and Intervenors to relocate advertising signs that is substantial. N.T. (04/17/2013).

---

4. The court notes that the historical version of the Philadelphia Code governing zoning issues was repealed August 22, 2012. This matter is analyzed under the historical zoning and planning code.

There is no discernible effect of L&I's action on some interest of Scenic that is beyond the abstract interest that all citizens of Philadelphia have in the outcome of zoning proceedings. *Spahn*, 977 A.2d at 1149-1153.

Second, Scenic, operating as an organization, has not demonstrated that it has an interest that is direct. *Spahn*, 977 A.2d at 1149-1153. There is no evidence of causation of harm to any interest of Scenic. N.T. (04/17/2013). Third, Scenic, operating as an organization, has not demonstrated that it has an immediate interest, such that a causal connection between L&I's issuance of zoning permits to Conrail and Intervenors to relocate advertising signs and some injury to Scenic. *Spahn*, 977 A.2d at 1149-1153; N.T. (04/17/2013).

The court notes that:

> Scenic Philadelphia is a citywide nonprofit organization working with citizens and community groups to improve the visual environment and quality of life in their neighborhoods. This mission is consistent with an interest in the visual environment experienced by Scenic's members.

Certified record (01/23/2012)("Letter to ZBA of 6/13/2012"). Having a mission statement that is related to or even directly promulgated to deal with a particular zoning issue is not enough to establish organizational standing in zoning proceedings or zoning appeals in Philadelphia. *Spahn*, 977 A.2d at 1149-1153; N.T. (04/17/2013) at 22-23. Scenic, the citywide nonprofit organization, has the same interests as the citizens of Philadelphia at large;

general taxpayer standing is not enough. *Id.* Scenic is not the proper plaintiff or appellant to bring this action; they cannot stand in as a proxy for the proper plaintiff or appellant. *Robinson Tp.*, 52 A.3d at 471 (stating that "the standing requirement in Pennsylvania 'is to protect against improper plaintiffs'").

Indeed, Scenic did not even attempt to demonstrate its standing to bring the instant appeal as an organization, presumably because Scenic somehow thought that representing six individuals *pro bono gave Scenic the organization* standing to bring an appeal *as a party* before the court of common pleas. N.T. (04/17/2013). The existence of a lawyer-client relationship does not establish *standing* to bring an appeal before this court. A lawyer-client relationship is a relationship between an attorney and his or her clients. A key indication of whether or not a lawyer-client relationship exists is the presence of an engagement letter outlining the boundaries of the relationship and other ethical requirements. Once retained, counsel, does not become a *party* to the litigation for which he or she is retained. Instead, counsel simply enters his or her appearance on behalf of the client and puts forth oral argument. Counsel does not have *standing* to bring an appeal on counsel's *own behalf* pursuant to a lawyer-client relationship, nor do counsel's statements to the court become testimony or evidence. It follows that staff attorneys for an organization cannot establish the organization's *standing* to bring an appeal through a *lawyer-client relationship with its members*. The staff attorneys for the organization would simply enter their appearance on behalf of their clients and put forth oral

argument. These principles are fundamental.

The court makes a distinction relevant to the disposition of this matter. First, an organization may appear before the court of common pleas as of right where they appear and participate in the hearing before the ZBA. *Callowhill Center Associates, LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 -810 (Pa. Cmwlth. 2010). However, intervening as of right is procedurally different than having standing to file an appeal to the court of common pleas outright. *Id.* (stating that "the holding of *Spahn* prevents taxpayers from filing appeals unless they are able to satisfy the standard articulated in *William Penn* and demonstrate an interest in their matter that is greater than any other citizen of Philadelphia"). Scenic, operating as an organization, has not demonstrated that it has standing to *appeal* L&I's issuance of a variance under the facts of this case. This is not a case where Scenic is seeking to *intervene* in an appeal filed by a party having proper standing to appeal. Scenic has not established its standing to bring an appeal in this matter as an organization.

## III. CONCLUSION

The court granted appellee's motion to quash appellant scenic's appeal. Scenic failed to demonstrate that either Scenic, operating as an organization, or members have standing to appeal a decision by the Philadelphia Zoning Board to uphold the issuance of variances to relocate outdoor advertising signs.