**SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB),** Appellant,

v.

**ZONING BOARD OF ADJUSTMENT, the City of Philadelphia and Revere National Corporation.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 1998.

Decided April 3, 1998.

Publication Ordered June 4, 1998.

---

Samuel C. Stretton, West Chester, for appellant.

Michael DiCroce, Fort Washington, for appellee, Revere National Corp.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

The Society Created to Reduce Urban Blight (SCRUB) appeals from an order of the Court of Common Pleas of Philadelphia County affirming a decision of the Zoning Board of Adjustment of the City of Philadelphia which had granted a variance to allow the erection of a large (12 × 24–foot) double-sided outdoor sign on the property located at 1200 Byberry Road in Philadelphia.

The property at issue is a long and narrow parcel of land with railroad tracks running through the center of it and is located in the G–2, General Industrial zoning district of the City. Further, this area in general has been designated as a "gateway" area into the City. Conrail Corporation owns the property and has laid the tracks to facilitate its rail transportation system. Aside from the tracks, the property is otherwise unimproved. Although the railroad tracks run parallel to Woodhaven Road, the area of Woodhaven Road that is adjacent to the proposed site of the sign is a "paper" road where the actual road has not been constructed yet. Although Conrail still owns the property, it sold advertising rights to Revere National Corporation (Revere), and Revere plans to place a 12–foot by 24–foot double-sided sign along Byberry Road.[1]

On February 25, 1993, Revere applied for a permit to erect the proposed sign. The Department of Licenses and Inspections denied its application because the sign would be located within 660 feet of the existing right-of-way of Woodhaven Road in violation of Section 14–1604(9) of the City's zoning code, which reads as follows:

---

1. Byberry Road, which is connected to Woodhaven Road by Evans Street, is a popular route for travelers to Center City.

(9) *Prohibited Areas.* Outdoor advertising signs and non-necessary signs shall be prohibited:

. . . .

(j) Within six hundred sixty feet of the outward edge of the right-of-way lines as defined by the Department of Streets, of Woodhaven [R]oad;

Philadelphia Code § 14–1604(9).

Revere appealed to the Zoning Hearing Board (Board), and on March 29, 1994, the Board conducted a hearing to determine if Revere should be granted a variance from the right-of-way provision. At the hearing, Revere. presented the testimony of Doug Stewart, a land planner. Mr. Stewart testified that other signs similar to the one proposed by Revere existed in the City and that he did not believe that it was appropriate to limit the location of such signs. In addition, Revere indicated that, if the Board would grant the variance for this location, if the extension of Woodhaven Road would ever be built in the future, Revere would not seek any condemnation proceeds for the "condemnation" and not only would immediately remove two of its presently existing signs in the area upon the grant of the variance,[2] but would also remove the new sign on Woodhaven Road.

In response, SCRUB, who intervened before the Board, presented evidence demonstrating that the proposed sign would negatively impact on both the aesthetics of the surrounding neighborhood and the value of the surrounding property. SCRUB's president also noted that the proposed sign would violate the city's zoning ordinance which prohibited such signs within 660 feet of the right-of-way of Woodhaven Road and it is undisputed that, if erected, the sign would be situated approximately 60 feet from the actual cartway of the future Woodhaven Road.

On April 21, 1994, the Board granted the proposed variance subject to the following conditions: (1) The sign could be on the land for a maximum of five years; (2) if Woodhaven Road was constructed, Revere would have to remove the sign and waive any right to condemnation proceeds; and (3) Revere would remove two existing signs in the area. In rendering its decision, the Board noted that the extension of Woodhaven Road had not been built yet, and, accordingly, Section 14–1604 was not applicable. Additionally, the Board concluded that Revere had demonstrated unnecessary hardship due to the narrow shape of the property. SCRUB appealed this determination to the Court of Common Pleas.

On appeal, after a preliminary determination of SCRUB's standing to appeal,[3] Common Pleas heard the merits on the issue of the variance. Common Pleas concluded that substantial evidence existed to support the Board's determination that Revere demonstrated undue hardship by virtue of the unique shape of the property. Additionally, Common Pleas concluded that the interests of the City were not being harmed presently because the actual road in question had not been constructed. On that basis, Common Pleas affirmed the Board's decision.

■ On appeal to this Court,[4] SCRUB argues that the Board erred by granting the variance when there was no evidence of an undue hardship that would occur if the variance was denied, and that the sign, when erected, would be in violation of Section 14–1604.

In *Valley View Civic Association v. Zoning Board of Adjustment,* our Supreme

---

**2.** Specifically, counsel for Revere indicated that it would "remove one billboard that has already been removed . . ., and one billboard in the process of being removed. . . ." (Notes of Testimony (N.T.), 3/29/94, at 6; Reproduced Record (R.R.) at 47a.)

**3.** Common Pleas had previously determined that SCRUB lacked standing to appeal; however, this Court, concluding that SCRUB did have standing to appeal, vacated Common Pleas' order. *See Society Created to Reduce Urban Blight v. Zoning*

*Board of Adjustment of Philadelphia,* 682 A.2d 1 (Pa.Cmwlth.1996).

**4.** When no further evidence is taken following a decision of a zoning hearing board, our standard of review is limited to whether the zoning hearing board committed a manifest abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

Court set out the standard for granting a variance as follows:

> The party seeking the variance bears the burden of proving that (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest.... The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district.... Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance.

*Valley View Civic Association,* 501 Pa. at 555–56, 462 A.2d at 640 (citations omitted).

█ We now hold that Revere did not overcome its burden of proof and clearly failed to demonstrate a case of undue hardship necessary to support the grant of a variance. Our review of the record indicates that **the only** evidence offered by Revere in support of its contention that it would suffer unnecessary hardship if the variance was denied was the following statement by Cynthia A. Tedeschi, Esq., counsel for Revere:

> As you can see from the pictures, the property slows down. It is also a long narrow property and has railroad tracks running through it. The erection of a large industrial building on this property would be almost impossible.

(Statement of Cynthia A. Tedeschi, N.T., 3/29/94, at 5; R.R. at 46a.) Revere offered no other evidence of any unnecessary hardship that would occur if the Board denied its variance request. Although our appellate review does not permit us to make a determination as to Ms. Tedeschi's competency as a *witness* to make such a statement, as distinguished from argument by counsel, regardless, it is clear that this statement, by itself, could not support the Board's finding of unnecessary hardship sufficient to grant a variance. What is implied by the statement is that Revere will suffer *financial* hardship if it cannot utilize the advertising rights which it possesses, and the statement glosses over the fact that (1) the property is presently being productively used for a permitted use, and (2) there is no right of a property owner

to utilize its land for its highest and best *financial* gain. The law is clear that, absent evidence that property will be rendered valueless, financial hardship alone is not a sufficient basis for granting a variance. *Atlantic Refining & Marketing Co. v. Zoning Hearing Board of Upper Merion Township,* 133 Pa.Cmwlth. 261, 575 A.2d 961 (1990).

Counsel for Revere argued that the physical characteristics of the property rendered it incompatible with any permitted industrial uses. Common Pleas apparently found this argument to be tantamount to an unnecessary hardship. However, the property is presently being used for an industrial use by Conrail: tracks for facilitating rail transportation. The record does not demonstrate that Conrail is prohibited from using the property as a railroad; rather, that appears to be the precise reason that Conrail purchased the property. Therefore, we conclude that the Board erred as a matter of law by granting the variance when Revere did not demonstrate the required showing of unnecessary hardship as required by *Valley View Civic Association.*

█ Furthermore, the Board committed an error of law when it determined that granting the variance would not be contrary to the public interest. The policy of the City, as specifically expressed in its zoning ordinance, indicates that it has a strong interest in keeping its streets free from urban blight. The legislative findings of the City Council, written as a preamble to the regulations of outdoor advertising, include the following:

> (g) Said signs jeopardize public safety by distracting pedestrians and to a greater extent passing motorists, since these signs by their nature are erected in areas intended to be seen by drivers of motor vehicles.

> (h) Regulation and removal of these signs will promote traffic safety by eliminating the hazards to pedestrians and motorists posed by distracting and confusing sign displays.

> (i) Regulation and removal of these signs will enhance the aesthetic beauty of the City of Philadelphia by promoting signs which are harmonious with the

streetscape and by eliminating signs which dominate or obscure views of the City.

....

**(k) There are few, if any, circumstances under which the prohibition of these signs will render property valueless, result in unnecessary hardship or otherwise meet the criteria for a variance stated in Section 14–1802.**

Philadelphia Code § 14–1604(1)(g)–(i), (k) (emphasis added). It is clear from the record that this is the exact type of sign that the council sought to regulate. Moreover, it is undisputed that the proposed sign would be within 660 feet of the right-of-way of Woodhaven Road, regardless of whether that road has been constructed or not. There was apparently some confusion before the Board over the fact that the City's right-of-way for Woodhaven Road is somehow dependent on whether the road itself is actually constructed. Of course, the right-of-way exists regardless of the construction of an actual cartway, and Section 14–1604 unquestionably prohibits signs within 660 feet **of the right-of-way**.

We, therefore, conclude that the proposed use would violate the Philadelphia Code, would be contrary to the declared public policy of the City of Philadelphia, and the Board erred as a matter of law in concluding that Revere satisfied the elements necessary to receive a variance.

Judgment reversed.

### *ORDER*

**AND NOW,** April 3, 1998, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.