**SPC COMPANY, INC. and
Eller Media Company**

v.

**ZONING BOARD OF ADJUSTMENT
OF THE CITY OF PHILADELPHIA
and The City of Philadelphia.**

**Appeal of: Pennsylvania Horticultural Society, Councilman David Cohen, The Society Created to Reduce Urban Blight (S.C.R.U.B.), Mary Tracy, The Center City Residents Association (CCRA) and Judith Eden.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2001.
Decided April 19, 2001.
Reargument En Banc Denied
June 27, 2001.

---

Robert M. Jaffe, Philadelphia, for appellants.

Carl S. Primavera, Philadelphia, for appellees.

Before McGINLEY, Judge, and FLAHERTY, Senior Judge, LEDERER, Senior Judge.

FLAHERTY, Senior Judge.

The Pennsylvania Horticultural Society, et al. (Appellants) appeal from a decision of the Court of Common Pleas of Philadelphia County (trial court). The trial court reversed a decision of the Zoning Board of Adjustment of the City of Philadelphia (Zoning Board) that denied a zoning permit request submitted by SPC Company, Inc. (SPC) and Eller Media, Inc. (Eller Media) (collectively, Appellees) for the purpose of seeking permission to erect an outdoor advertising sign. We reverse.

On June 23, 1999, SPC filed an Application for a Zoning Permit and/or Use Registration Permit (Zoning Permit) with the Philadelphia Department of Licenses and Inspections (Department) requesting permission to erect one free-standing, double-face, illuminated, non-accessory outdoor advertising sign on its property.[1] (Supplemental Reproduced Record (S.R.R.) at 0001).[2] SPC operates a metal scrap yard on its property, which is located at 2600 Penrose Ferry Avenue (Penrose Avenue) in Philadelphia and is zoned LR (least restrictive) Industrial. The George C. Platt Memorial Bridge (Platt Bridge) is west of SPC's property. On June 29, 1997, the Department determined that the proposed sign would be in violation of Section 14–1604(9)(a) of the Philadelphia Zoning Code (Code), which prohibits outdoor advertising signs "[w]ithin 660 feet of all the bridges over the Schuylkill River from the Girard Point Bridge northwesterly to the Belmont Avenue bridge." (Appellees' Brief, Exhibit 1). Because the Platt Bridge is located in the area covered by Section 14–1604(9)(a), the Department issued a Notice of Refusal of Permit. (S.R.R. at 0003). Thereafter, Appellees filed a Petition of Appeal with the Zoning Board. (S.R.R. at 0004).

On August 4, 1999, hearings were held before the Zoning Board. Appellees presented the testimony of Albert M. Tantala, who is a professional engineer licensed in Pennsylvania. He testified that:

> The only determination between Penrose Avenue the street and Penrose Avenue the bridge is, when PennDOT let the contract for construction of the bridge and road, PennDOT assigned a certain sector and called that the bridge contract, and the rest of the construction, called the Penrose Avenue sector.

---

1. SPC and Eller Media entered into an agreement to allow Eller Media to erect the sign on SPC's property. (S.R.R. at 0002).

2. The Reproduced Record submitted by Appellants is not numbered as required by Pa. R.A.P. 2173. However, Appellees submitted a Supplemental Reproduced Record, which is numbered. Therefore, citations are to the Supplemental Reproduced Record.

That sector . . . is approximately 1,000 feet, 1,500 feet away. So based on Penn DOT's contractual determination, the bridge starts about 1,200 or 1,100 feet to the west of the proposed sign.

(S.R.R. at 0028–0029). Mr. Tantala also testified that the area of Penrose Avenue that is elevated approaching the Schuylkill River cannot be defined as a bridge. He also stated that the Code does not define the term "bridge." (S.R.R. at 0029). However, a May 20, 1999 site plan prepared by Mr. Tantala indicates that:

In response to the "Prohibited Areas" listed in Paragraph 14–1604(9) of the Zoning Code, the proposed sign

(a) *Is* within 660 feet of a bridge over the Schuylkill River from the Girard Point Bridge northwesterly to the Belmont AVE Bridge ...

(Site plan Note 8(a); S.R.R. at 0122) (emphasis added). This inconsistency was not explained during Mr. Tantala's testimony.

Appellees also presented the testimony of Fred Cornell, who is an engineer employed by SPC. On cross-examination, the following exchange took place:

Q: I wanted to ask you about the economic viability of your company, because you're asking for a hardship. Can you tell me what your gross income was last year of your Company?

A: I'm not privy to that, and I would think it would be confidential information, frankly ...

Appellees' attorney: Well, I'll object. The hardship has to do with the property and not the business.

(S.R.R. at 0042–0043). Appellees did not present any other testimony with regard to any financial hardship that SPC would suffer if it is not allowed to erect the proposed sign.

Appellants presented the testimony of Rick Schnitzler, who has been "involved in highway perceptions and planning related to highways.. since the late 1960s." (S.R.R. at 0053–0054). However, he did not provide any testimony as to how far the proposed sign is from the Platt Bridge. Rather, Mr. Schnitzler testified as to whether the location of the proposed sign would distract motorists. Furthermore, none of the other witnesses presented by Appellants provided testimony as to the distance from the Platt Bridge to the proposed sign.

The Zoning Board issued a Notice of Decision on November 15, 1999 refusing Appellees' request for a zoning permit, concluding that the Code does not define the term "bridge" and that neither the Pennsylvania Department of Transportation nor the City of Philadelphia have determined at what point the Platt Bridge begins. (S.R.R. at 0090–0091). The Board cited to the dictionary definition of "bridge" as "a structure carrying a roadway over a depression or obstacle." Therefore, the Zoning Board determined that the Platt Bridge begins at the point where Penrose Avenue becomes elevated, because this is the point where the roadway begins to be carried over the Schuylkill River. Under the definition of "bridge" advanced by the Zoning Board, SPC's proposed outdoor sign would be within 660 feet of the Platt Bridge and therefore in violation of Section 14–1604(9)(a). Accordingly, the Zoning Board determined that the proposed sign may only be permitted if the requirements for granting a zoning variance are met. However, the Zoning Board determined that Appellees did not meet these requirements and are therefore not entitled to a use variance.

On November 29, 1999, Appellees appealed the decision of the Zoning Board to the trial court. (S.R.R. at 0097). In a June 2, 2000 decision, the trial court con-

cluded that the evidence of record indicates that the Penrose Avenue road surface becomes elevated directly in front of the location of the proposed sign. The trial court also determined that:

> ... A Court is not privileged to expand a deprivation of property by including the approach to the bridge as part of the bridge.

> This position is consistent with general Hornbook law that any ambiguous or vague terms in an ordinance which restrict a permitted use shall be construed so as to give the landowner the benefit of the least restrictive use. This court finds that the evidence in this record establishes that the elevated section is in reality the Penrose Avenue section and that was not restricted by this ordinance.

(R.R. at 0120). Accordingly, the trial court reversed the decision of the Zoning Board. This appeal followed.

Basically, the principal issue before us is whether a word in common usage, such as "bridge" in the case *sub judice*, when used in the Zoning Code and not otherwise defined, is ambiguous, as held by the trial court, or whether the Zoning Board, under the circumstances, properly found that the dictionary definition and the plain, ordinary meaning of "bridge" should be used to interpret that term in their Zoning Code.

 The trial court held a May 3, 2000 hearing. However, because the trial court did not take any additional evidence, our scope of review is limited to determining whether the Zoning Board committed an error of law or manifestly abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). The Zoning Board's role is that of the factfinder, and "[a] conclusion that the Board abused its discretion may be reached only if its find-

ings are not supported by substantial evidence." *Constantino v. Zoning Hearing Board of Borough of Forest Hills,* 152 Pa.Cmwlth. 258, 618 A.2d 1193, 1195 (1992).

 Appellants argue that the trial court erred by rejecting the Zoning Board's findings of fact and conclusions of law with regard to where the Platt Bridge begins. We agree. The Statutory Rules of Construction provide that:

> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S.A. § 1903.

 When a term in a zoning code is not defined, Pennsylvania courts use dictionaries as source material to determine the common and approved usage of a term. *Id.* The term "bridge" is defined as "a structure carrying a pathway or roadway over a depression or obstacle." Merriam–Webster's Collegiate Dictionary, Tenth Edition (1997). Additionally, "[i]n interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning ... and any doubt must be resolved in favor of the landowner and the least restrictive use of the land." *Kissell v. Ferguson Township Zoning Hearing Board,* 729 A.2d 194, 197 (Pa.Cmwlth. 1999).

PennDOT assigned "sectors" when it divided up the construction contract for the Platt Bridge and Penrose Avenue, but it did not make any attempt to determine the exact boundaries of the Platt Bridge. Therefore, the Zoning Board was required to use its discretion to determine the point

at which the Platt Bridge begins. In order to accomplish this task, the Zoning Board looked to the definition of the term "bridge" and found that a bridge is "a structure carrying a pathway or roadway over a depression or obstacle." Accordingly, the Zoning Board determined that the elevation of the roadway indicates the point at which the Platt Bridge begins, because this is the point where Penrose Avenue begins to be carried over the Schuylkill River. Although one could reach a different conclusion as to where the Platt Bridge begins, the Zoning Board's determination is supported by substantial evidence, as this determination does correspond with the plain, ordinary meaning of the term "bridge." Therefore, because we find no abuse of discretion, we may not disturb the Zoning Board's findings of fact and conclusions of law.

Having determined that the Zoning Board's finding that the proposed sign is within 660 feet of the Platt Bridge is supported by substantial evidence, we must now address Appellees' argument that the Zoning Board erred by determining that they are not entitled to a variance. Appellees argue that the Zoning Board incorrectly determined that they would have to establish an entitlement to a use variance rather than a dimensional variance in order to erect the proposed sign. We disagree.

■ "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998). Conversely, when an owner seeks a use variance, he is seeking "to use the property in a manner that is wholly outside the zoning regulation." *Id.*

■ Additionally, in *Rollins Outdoor Advertising v. Zoning Board of Adjustment,* 108 Pa.Cmwlth. 277, 529 A.2d 99, 103 (1987), we held that the variance being sought "is more accurately characterized as a *use* variance, *i.e.,* Rollins has requested that the Board permit its sign to remain in the buffer zone where it is a non permitted use." Similarly, in this case, Appellees are attempting to erect the proposed sign within 660 feet of the Platt Bridge, where outdoor advertising signs are not permitted at all. Therefore, Appellees' variance request would properly be characterized as a use variance.

■ Having determined that Appellees are in fact seeking a use variance, we must now determine whether the Zoning Board erred in concluding that Appellees have not established that they are entitled to a use variance. In order to establish the right to a variance, the landowner must demonstrate unnecessary hardship. *Hertzberg* at 257, 721 A.2d 43, 721 A.2d at 43. "[I]n the context of use variances ... unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance." *Id.*

Furthermore, in *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia,* 713 A.2d 135 (Pa.Cmwlth.1998), the landowner wished to erect an outdoor advertising sign that would be located within 660 feet of a right-of-way, which was prohibited by Section 14–1604(9) of the Code. This court noted that "(1) the property is presently being productively used for a permitted use, and (2) there is

no right of a property owner to utilize its land for its highest and best *financial* gain. The law is clear that, absent evidence that property will be rendered valueless, financial hardship alone is not a sufficient basis for granting a variance." *Id.* at 138.

█ In this case, SPC's property is being productively used as a metal scrap yard, which is a permitted use. Furthermore, SPC has presented no testimony to indicate that it will suffer severe financial hardship if the use variance is not granted. As per *Hertzberg*, SPC has failed to establish that it will suffer unnecessary hardship if it is not allowed to erect the proposed sign. Therefore, the Zoning Board properly determined that Appellees are not entitled to a use variance.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, April 19, 2001, the order of the Court of Common Pleas of Philadelphia County dated June 2, 2000 is hereby REVERSED.

McGINLEY, Judge, Dissenting.

I respectfully dissent to the majority's conclusion "that the trial court erred by rejecting the Zoning Board's findings of fact and conclusions of law with regard to where the Platt Bridge begins."

The majority states:

PennDOT assigned 'sectors' when it divided up the construction contract for the Platt Bridge and Penrose Avenue, but it did not make any attempt to determine the exact boundaries of the Platt Bridge. Therefore, the Zoning Board was required to use its discretion to determine the point at which the Platt Bridge begins. In order to accomplish this task, the Zoning Board looked to the definition of the term 'bridge' and found that a bridge is 'a structure carrying a pathway or roadway over a depression or obstacle.' Accordingly, *the Zoning Board determined that the elevation of the roadway indicates the point at which the Platt Bridge begins,* because this is the point where Penrose Avenue begins to be carried over the Schuylkill River. Although one could reach a different conclusion as to where the Platt Bridge begins, the Zoning Board's determination is supported by substantial evidence, as this determination does correspond with the plain, ordinary meaning of the term 'bridge.'

Majority Opinion at 6–7 (emphasis added).

The trial court reversed the Zoning Board's decision and concluded:

A Court is not privileged to expand a deprivation of property by including the approach to the bridge as part of the bridge.

This position is consistent with the general Hornbook law that *any ambiguous or vague terms in an ordinance which restrict a permitted use shall be construed so as to give the landowner the benefit of the least restrictive use.* This Court finds that the evidence in this record establishes that the elevated section is in reality the Penrose Avenue section and that was not restricted by this ordinance.

Trial Court Memorandum, June 2, 2000, at 1–2 (emphasis added).

As accurately noted by the trial court, the rule of law controls when confronted with ambiguous or undefined terms that restrict a permitted use. Any ambiguity is to be interpreted broadly to enable the landowner to enjoy the least restrictive use. *See Appeal of Shirk,* 114 Pa.Cmwlth. 493, 539 A.2d 48 (1988). In sum, the trial court properly construed the term

"bridge" within the context of the Zoning Code to grant Appellees' request for a zoning permit.

Accordingly, I would affirm the order of the trial court.[1]

---

1. There is no need to address the variance issue in light of this outcome.