ST. JOHN THE BAPTIST UKRAINIAN GREEK CATHOLIC CHURCH

v.

The CITY OF PITTSBURGH ZONING BOARD OF ADJUSTMENT and Leah I Holdings, LP.

Appeal of: Leah I Holdings, LP.

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2013.

Decided Jan. 24, 2014.

9.  Act of July 23, 1970, P.L. 563, *as amended,*    43 P.S. §§ 1101.101–1102.2301.

Jonathan M. Kamin, Pittsburgh, for appellant.

Blaine A. Lucas, Pittsburgh, for appellee St. John The Baptist Ukranian Greek Catholic Church.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Leah I Holdings, LP (Leah) appeals from the June 3, 2013, order of the Court of Common Pleas of Allegheny County (trial court) reversing the decision of the City of Pittsburgh Zoning Board of Adjustment (ZBA) and denying a use variance, two dimensional variances, and a special exception. We affirm.

Leah owns property located at 700 East Carson Street, Pittsburgh (Property) in the General Industrial (GI) zoning district. The Property abuts a Residential zoning district, and there are residential properties across the street from the Property. Leah, through Benjamin Kelley (Kelley), filed a request for three dimensional variances to develop a service station with 47 parking stalls, a fast casual eatery, and a convenience center on the Property.[1] The service station and convenience center would be open 24 hours per day. There are two service stations located three blocks away on East Carson Street. (ZBA Decision, 11/15/12, Findings of Fact Nos. 1–2, 4–6.)

At the ZBA's hearing, Leah also requested a special exception to change from one nonconforming use to another nonconforming use pursuant to section 921.02.A.4 of the Pittsburgh Zoning Code (Code). The Property was previously owned by Rennekamp, a cement manufacturing and processing facility. Rennekamp's industrial use pre-dated the Code. When the Code was implemented, the Property became nonconforming with regard to performance standards, such as noise and operational hours. (Id., Findings of Fact Nos. 3, 7–11.)

Rennekamp housed underground gasoline storage tanks on the Property. Rennekamp also used the entire rear of the Property up to its southern boundary line, which abuts property owned by Norfolk Southern Railroad (Norfolk). Rennekamp erected structures that crossed the proper-

---

1. Kelley sought a variance from section 911.04.A65(f) of the Pittsburgh Zoning Code (Code) that requires service stations to be located 150 feet from a residential zoning district, a variance from section 904.06.C of the Code that requires a minimum rear set-back of 20 feet, and a variance from section 912.04.B of the Code that requires an accessory use to be set back at least five feet from the rear lot line when the rear lot line is not adjacent to a roadway.

ty line, overflowing onto Norfolk's property. After purchasing the Property, Leah demolished portions of Rennekamp's facility. (*Id.,* Findings of Fact Nos. 12–15.)

The Property has a large concrete retaining wall that runs along its length on East Carson Street, turns the corner and runs along 7th Street to the proposed entrance to the Property. The Property's proposed entrance would increase from 51 feet to 60 feet and would require the removal of part of the wall on 7th Street near the entrance. (*Id.,* Findings of Fact Nos. 16–17.)

Leah proposed to reduce the size of the curb cut from 90 feet to 60 feet to provide additional on-street parking along 7th Street. Access by vehicle to the Property would be from a two-way access on 7th Street and an additional entrance on East Carson Street, via existing curb cuts. The Property is triangular in shape and has a significant grade change from East Carson Street to the Property of approximately 15 feet. The pinch point at the existing driveway on East Carson Street is the reason for the rear setback request, as it inhibits Leah's ability to provide parking. The traffic study found that a traffic light was not necessary at the intersection of 7th Street and East Carson Street. (*Id.,* Findings of Fact Nos. 18–22.)

Leah received favorable reviews for the proposed development from the South Side Design Review Committee. St. John The Baptist Ukrainian Greek Catholic Church (Church), which opposes the proposed plans for the Property, is located east of the Property, across 7th Street. The Church expressed concern that increased traffic would discourage elderly parishioners from traveling to the Church. The Church has approximately 200 to 225 parishioners. The Church cooks and sells pierogies and holds services on Saturday evening, Sunday morning, and sometimes on Sunday afternoon. The parishioners park on both sides of 7th Street. The Church is concerned about the parishioners' ability to park and participate in Church activities safely. Another neighbor, Lorraine Sobol, testified that the Rennekamp cement plant did not operate 24 hours per day and limited its work from 6:00 a.m. to 11:00 p.m. (*Id.,* Findings of Fact Nos. 23–32.)

The ZBA granted Leah's two requested dimensional variances from the setback requirements of sections 904.06.C2 and 912.04.B of the Code, determining that the Property has unique physical characteristics that create a substantial hardship for Leah. The Property is a unique triangular shape, is very narrow, has a pinch point on the western boundary, and has a significant elevation change. Further, the topography and shape of Norfolk's property is also a significant detriment to being able to use the Property in conformance with the Code and creates a unique physical circumstance.

The ZBA further reasoned that, due to the physical characteristics, the Property cannot possibly be developed in strict conformity with the Code. The previous use of the Property was an industrial operation that was grandfathered into the Code, so it did not have to conform to the Code's requirements. Leah did not create the unnecessary hardship, and the Property remains the same size and shape. The proposed development of the Property will not alter the essential character of the neighborhood and the use would be less intense than Rennekamp's existing industrial use. Further, Leah has requested the minimum required dimensional variances for development to occur on the Property. The historical use of the Property further evidences the necessity to utilize the rear-yard setbacks based upon the

size, shape, and topography of the Property.

Likewise, for the same reasons that the ZBA granted the other two dimensional variances, the ZBA also granted Leah a dimensional variance from section 911.04.-A.65(f) of the Code. The ZBA determined that Leah met all of the Code's requirements for a service station use, except being located 150 feet from any residential zoning district. The ZBA granted Leah's dimensional variance, relieving Leah from the requirement of a 150–foot setback from any residential zoning district.

Next, the ZBA granted Leah a special exception, pursuant to section 921.02.A.4 of the Code, permitting Leah to change from one nonconforming use to another nonconforming use. The ZBA stated that neither the industrial use nor the proposed service station is a permitted use in a residential zoning district by right. However, the ZBA determined that the activity at the proposed service station is less intensive than Rennekamp's industrial use. The ZBA noted that the proposed development will have fewer employees on site, a smaller building size and height, and minimal traffic impact.

The ZBA granted Leah's request for dimensional variances from sections 904.06.C2, 912.04.B, and 911.04.A.65(f) of the Code and Leah's request for a special exception pursuant to section 921.02.A.4 of the Code. The Church appealed to the trial court.

The trial court determined that the ZBA "mischaracterized" one of Leah's requested variances as dimensional, when it should have been classified as a use variance. The trial court found that Leah is attempting to put a service station within 40 feet of a residential zoning district, where it is not permitted. Section 911.04.-A.65(f) of the Code requires a service station to be located 150 feet from any residential zoning district. The trial court further found that Leah failed to meet the requirements for a use variance because Leah failed to prove that: (1) the physical characteristics of the Property constitute an undue hardship, (2) the Property cannot be utilized without the requested variances, (3) the Property cannot be used in strict conformity with the Code, and (4) the variance will not alter the essential character of the neighborhood or harm the public welfare.

■ The trial court also determined that the ZBA improperly granted the requested special exception to change from one nonconforming use to another because the previous use, the Rennekamp cement plant, was permitted by right and was not a nonconforming use. Additionally, Leah abandoned any nonconforming use when it demolished the Rennekamp cement plant. The trial court reversed the ZBA, and Leah appealed to this court.[2]

### Special Exception

Initially, Leah contends that the trial court erred in determining that Leah abandoned its nonconforming use and was, therefore, not entitled to a special exception to change from one nonconforming use to another nonconforming use pursuant to section 921.02.A.4 of the Code.[3]

---

**2.** Our review where the trial court takes no additional evidence is limited to determining whether the ZBA committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 554, 462 A.2d 637, 639 (1983).

**3.** Section 921.02.A.4 of the Code provides in part as follows:

A nonconforming use may be changed to another nonconforming use, as a special exception, provided that the new use shall be of the same general character or of a

■ "[A] lawful, nonconforming use of a property is a use predating the subsequent prohibitory zoning restriction." *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1210 (Pa. Cmwlth.2009). "The right to maintain [a] nonconforming use is only available for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Id.* at 1210–11. In addition, a lawful nonconforming use establishes in the property owner a vested property right, which cannot be abrogated or destroyed unless it is a nuisance, is abandoned, or is extinguished by eminent domain. *See PA Northwestern Distributors, Inc. v. Zoning Hearing Board of the Township of Moon*, 526 Pa. 186, 192, 584 A.2d 1372, 1375 (1991).

■ Here, the ZBA erred in finding that Rennekamp's use was nonconforming. The Property is located in the GI district, which permits industrial uses by right. Although Rennekamp's hours of operation and noise level may have been nonconforming, the use itself was not. Thus, the trial court correctly determined that the ZBA erred in granting Leah's request to change from one nonconforming use to another nonconforming use pursuant to section 921.02.A.4 of the Code.[4]

### Use Variance

Next, Leah seeks a variance from the Code's requirement that "a Service Station use shall be located at least one hundred fifty (150) feet from any residential zoning district." Section 911.04.A.65(f) of the Code. Leah contends that the trial court erred as a matter of law in recasting this dimensional variance request for relief

from the required 150–foot setback as a use variance.

Section 926.222 of the Code defines "setback" as "the distance that is required by this Code to be maintained in an unobstructed state between a structure and the property line of the lot on which the structure is located." In *SPC Company, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 773 A.2d 209, 211 (Pa. Cmwlth.2001), an outdoor advertising company sought a dimensional variance to construct a billboard within 660 feet of a bridge, where it was prohibited. This court agreed with the ZBA that the company needed a use variance, not a dimensional variance, because the requestor was attempting to place a sign in an area where it was not permitted. *Id.* at 214.

■ Here, the 150–foot prohibition is not related to the location of the service station structures vis-à-vis the property line of the lot where the structures are to be located. Rather, the 150–foot prohibition concerns the distance between the property line of the lot containing the service station and a residential zoning district. This attempt to erect a service station where it is prohibited requires a use variance. *See SPC*, 773 A.2d at 214. Thus, the trial court correctly determined that the ZBA erred in granting a dimensional variance because a use variance is needed for relief from the Code requirement that any lot containing a service station be located at least 150 feet from a residential zoning district.

The Code sets forth the requirements for granting all variances at section 922.09.E as follows:

---

character that is more closely conforming than the existing, nonconforming use.

4. We also note that even if it were a nonconforming use, Leah demolished Rennekamp's facilities, thereby abandoning the use. *See PA*

*Northwestern Distributors*, 526 Pa. at 192, 584 A.2d at 1375. Leah's representative testified that Leah demolished the Rennekamp facility, so the "facility is no longer there." (N.T., 9/6/12, at 9–10.)

No variance in the strict application of any provisions of this *Zoning Code* shall be granted by the [ZBA] unless it finds that all of the following conditions exist:

1. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to the conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

2. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

3. That such unnecessary hardship has not been created by the appellant;

4. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

■ As stated in section 922.09.E of the Code, Leah must demonstrate an unnecessary hardship in establishing the right to a variance. This court has explained:

In the context of use variances ... unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance.

*SPC,* 773 A.2d at 214 (citation omitted). Further, a property owner does not have the right to use his or her land for its highest and best financial use. *Id.* at 215.

■ In this case, Leah did not prove that the physical features of the Property are such that it cannot be used for any permitted purpose, that the Property could not be changed for another permitted use only at a prohibitive amount, or that the Property has no value for any purpose that is permitted by the Code. Therefore, the trial court did not err in reversing the ZBA and denying Leah a use variance.

### Dimensional Variances

Lastly, Leah contends that the trial court abused its discretion and/or committed an error of law in reversing the ZBA's decision to grant the requested dimensional variances. Leah sought two dimensional variances with regard to the rear-yard setback and the setback for parking stalls for the service station use.

■ We again look at the requirements for a variance under section 922.09.E of the Code. However, "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 258–59, 721 A.2d 43, 48 (1998). When seeking a dimensional variance, "the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable reg-

ulations." *Id.* at 257, 721 A.2d at 47. The applicant does not have to show that the property could not be used for any other purpose. *Id.*

Section 904.06.C of the Code provides for a minimum rear setback of 20 feet for uses in the GI district. Section 912.04.B of the Code provides that accessory uses shall be set back at least five feet from the rear lot line when the rear lot line is not adjacent to a roadway. Leah sought dimensional variances to obtain approval for a zero-foot rear setback and a zero-foot setback for parking stalls for the service station use. Because the service station use is not permitted at that location, there is no need for setbacks for a service station use. *See Hertzberg*, 554 Pa. at 257, 721 A.2d at 47 (stating that a dimensional variance is sought within a permitted use). Without knowing the permitted use to which Leah will put the property, we cannot determine if a variance is necessary. Therefore, the trial court did not err in reversing the ZBA and denying Leah's dimensional variances.

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this *24th* day of *January*, 2014, we hereby affirm the June 3, 2013, order of the Common Pleas Court of Allegheny County.