# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank W. Koskovich,            :
           Appellant        :
           :
           v.            :
           :
The Board of Supervisors of The       :
Sterling Township, The Sterling       :
Township Zoning Hearing Board,       :
Charles Tufano and Sandra Tufano,      :
husband and wife, Charles A. Landon    :
and Donna L. Landon, husband and     :
wife, and James Lincoln Arthur and     :    No. 1441 C.D. 2021
Karen L. Arthur, husband and wife     :    Submitted: December 2, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: April 19, 2023

Frank W. Koskovich (Koskovich) appeals from the November 16, 2021, decision and order of the Court of Common Pleas of Wayne County (trial court). The trial court affirmed the December 10, 2020, decision of the Sterling Township (Township) Zoning Hearing Board (Board), which upheld the Township zoning officer's denial of Koskovich's application for a zoning permit under the Sterling Township Zoning Ordinance (2017) (Ordinance) to place highway construction debris as fill on his property. Upon review, we affirm.

## I. Factual & Procedural Background

Koskovich owns an unimproved 8.87-acre parcel (the Property) in the Township. Reproduced Record (R.R.) at 345a. It is in an area zoned as "RD - Rural Development." *Id*. at 345a-46a. Koskovich previously applied to the Board for a "special exception for a fill site" on the Property. *Id*. at 44a. In December 2019, the Board issued a decision concluding that it had no jurisdiction over the application as filed. *Id*. at 45a-46a. The Board reasoned that while there is no use titled "storage of fill" in the Ordinance, Koskovich's proposed use was "similar" to a solid waste facility, which is permitted as a conditional use in the Township's "MU - Mixed Use" area but not allowed in the RD area, or a storage yard for minerals,[1] which is permitted as a conditional use in the RD area.[2] *Id*. The Board therefore found Koskovich's proposal to use the Property solely as a "fill site" was not eligible under Section 404.2(B) of the Ordinance ("Uses Not Specified in Schedule of Uses"), which does not allow a special exception when the proposed use is available elsewhere in the Township. *Id*. The Board thus determined that it lacked jurisdiction because conditional uses are determined by the Township's Board of Supervisors. *Id.*

Koskovich appealed to the trial court, which in October 2020 issued an order, without a corresponding opinion, stating that "the findings of the [Board] are

---

[1] Koskovich has not sought a conditional use permit for mineral storage on the Property.

[2] A guide sheet at the beginning of the Ordinance states that the "**Schedule of Uses** in Article IV" "lists all of the uses allowed in each district and the **Table of Uses Permitted by Districts** lists uses by category and specifies in which Districts the uses are allowed." *See* Guide to Using this Zoning Ordinance. The guide sheet also states that the "**Schedule of Uses** in Article IV also classifies all of the uses allowed in each Zoning District: **Principal Permitted Uses** and **Accessory Uses** – action by the Zoning Officer; **Conditional Uses** – review by Planning Commission, action by Board of Supervisors (See § 1208); **Special Exceptions** – review by Planning Commission, action by Zoning Hearing Board (See § 1208)." *Id*. (emphasis in original).

2

hereby vacated, and . . . the finding of no standing due to lack of jurisdiction of the [Board] in regard to the no special exceptions finding shall stand." *Id*. at 68a. Koskovich did not appeal that order.[3]

Meanwhile, in January 2020, while the special exception request was pending in the trial court, Koskovich submitted a Township form titled "Application for Building Permit," seeking a "zoning permit" for "placement of fill" on the Property. R.R. at 261a. A site plan attached to the application indicated that the use for which the permit was sought was commercial. *Id*. at 265a. In February 2020, the Township's zoning officer denied Koskovich's application. *Id*. at 261a. In an attached report, the officer stated that use of the Property as a commercial fill site was not a principal permitted use in the RD district and that Koskovich should "file a request for a conditional use for a commercial fill site."[4] *Id*. at 262a-63a.

The officer noted that such a request must comply with Article VII of the Ordinance, which is titled "Performance Standards and Environmental Protection" and generally provides requirements for development in the Township to ensure public and environmental health and safety and to preclude nuisance uses and activities. *Id*. at 263a; *see also* Ordinance § 701 ("Performance Standards Applicable to All Uses in All Districts"). Specifically, the officer cited Section 707 of Article VII, which is titled "Grading and/or Filling Operations." *Id*. This Section states: "The grading and/or filling of a lot, parcel or any site involving cuts and/or

---

[3] In this appeal, both sides agree that this matter does not fit within the special exception aspect of the Ordinance. Koskovich's Br. at 29-30; Objectors' Br. at 11. Objectors are Charles and Sandra Tufano, husband and wife; Charles A. Landon and Donna L. Landon, husband and wife; and James Lincoln Arthur and Karen L. Arthur, husband and wife.

[4] Presumably the zoning officer was referring to storage for forest products and minerals, which is listed as a conditional use in the RD district. *See* Ordinance Schedule of Uses for RD District. As noted above, Koskovich has not sought such a permit.

3

fills with an average depth greater than five (5) feet over an area of one (1) acre or more shall require a zoning permit when such grading is not part of an approved subdivision or land development plan." Ordinance § 707. Section 707 also enumerates specific requirements for grading and filling operations, including submission of grading and drainage plans, stormwater and slope limits, soil erosion and sedimentation controls, and avoidance of hazardous conditions. Ordinance § 707.1-707.6.

Koskovich appealed to the Board, which held a hearing in October 2020. A new zoning officer testified that placing fill on a property to such an extent that its topography is changed constitutes a "use" not allowed in the RD area and that the Ordinance bars any use that is not scheduled in a given district. R.R. at 100a-02a, 105a-06a & 115a. The zoning officer had inspected the Property in late 2019 and saw fill on the site comprised of "rubble, concrete, [and] road material." *Id*. at 119a & 125a. He considered what he saw to be solid waste, placement of which is not allowed at all in the RD area and only allowed as a conditional use in the Township's MU area as "solid waste facilities," such as landfills. *Id*. at 125a & 128a-30a. He later acknowledged, however, that the material was "being brought to [the] site as clean fill to fill the site and it meets [the Pennsylvania Department of Environmental Protection's (DEP)] requirement for clean fill." *Id*. at 134a.

The zoning officer also testified that Section 707 of the Ordinance requires a use-based zoning permit as a prerequisite for grading and filling on a site. R.R. at 105a. He stated that in this context, the zoning permit must come from either the Board or the Township Board of Supervisors upon a showing by the applicant that the proposed use, in this case grading and filling, fits within the specific district. *Id*. at 131a-32a. As part of his investigation of this matter, he learned that Koskovich

4

had a permit from the Wayne County Conservation District for fill placement; however, that permit required concurrent permission from the Township, which Koskovich had not secured before starting his filling activities. *Id*. at 132a.

Koskovich presented Mitchell Jacobs (Jacobs), a professional engineer and the owner of Kiley Associates, which submitted the zoning permit application on Koskovich's behalf. Jacobs testified that his company was retained to "extend the fill that [Koskovich] already had on the site." R.R. at 138a-39a. The Property was vacant and there was no proposed use for it or plan to develop it as of 2019. *Id*. at 141a-42a. In preparing the application, Jacobs consulted Section 707 of the Ordinance. *Id*. at 143a-44a. He stated that his company would comply with the Ordinance's requirements for stormwater runoff, slopes, hazardous conditions, and other particulars. *Id*. He explained that all necessary permits from the county and state had not yet been secured because the Township's approval is a prerequisite for those permits. *Id*. at 149a.

Based on his understanding of the Ordinance, Jacobs opined that the fill project was not a proposed or different land use. R.R. at 158a. He recognized that the Property would be altered by the project but stated that no additional construction or development was planned. *Id*. He knew that grading and filling was not listed as a principal permitted use in the RD area, but he did not view it as prohibited, either. *Id*. at 165a-68a. He acknowledged that the site plan accompanying the application indicated that the proposed use was commercial, but stated that was an error; he conceded, however, that he did not believe the Property would be used solely for residential purposes. *Id*. at 151a & 157a. Jacobs admitted that he personally had never been on the Property or tested the materials being placed on it and did not know what the materials were. *Id*. at 162a & 171a.

5

Koskovich also called William Whitehead (Whitehead), Kiley Associates' soil and environmental scientist. Whitehead had been to the Property four times and described the fill as soil, rock, asphalt and concrete; he had not seen any exposed steel rebar there. R.R. at 184a-86a & 208a. He understood the materials were coming from a demolition/construction project on Interstate 84. *Id*. at 205a. He acknowledged that he has never dealt with solid waste issues, but he did not think the materials were solid waste because he did not believe they were hazardous or would have an adverse effect on the neighboring soils and waters. *Id*. at 195a-96a & 204a. He stated that the source of the material must certify that it is clean fill and that Koskovich as the property owner must maintain copies of the certification. *Id*. at 202a-203a. He did not, however, testify that Koskovich had obtained such a certification. *Id*. at 206a. Whitehead explained that while he viewed the fill activity as an "operation" that took place on the Property, he did not view the Property itself as a formalized "facility" for such activity. *Id*.

Objectors presented Thomas Shepstone (Shepstone) as an expert in zoning and land use. He owns a planning and research consulting firm and has written and administered zoning ordinances for several decades. R.R. at 223a. He averred that a zoning permit as required in Section 707, which sets out performance standards for grading and filling, cannot be granted directly for that purpose alone in the absence of approval for a principal permitted use, conditional use, accessory use, or special exception based on the provisions in the Ordinance that govern the designated district. *Id*. at 226a. He explained that the process requires the applicant first secure a permit for the proposed use, then ensure compliance with the standards of Section 707 if grading and filling is part of the project. *Id*. at 227a.

6

Shepstone stated that he had not trespassed on the Property to examine the fill but had driven by twice. R.R. at 227a. He described the site as "being used as a disposal site for . . . concrete rubble and the like." *Id.* His understanding of the Ordinance was that the current use of the Property as a fill site was not allowed in the RD area but is allowed in the Township's MU area as a solid waste facility. *Id.* at 228a-29a. He viewed the material being used as fill on the Property as solid waste pursuant to the Ordinance, not clean fill.[5] *Id.* at 230a.

Charles Tufano (Tufano), an objector, also testified. He lives across the street from the Property. R.R. at 242a. Since 2019, he has observed dumping of "hundreds of truckloads of material coming off [Interstate] 84" and believes the Property is being used as a general dumping site in the area although he does not know if the dumping is with or without Koskovich's permission. *Id.* at 243a & 251a. He has seen and photographed exposed steel rebar from his property across the street and his pictures were entered into evidence. *Id.* at 244a.

In a December 2020 decision, the Board unanimously upheld the zoning officer's denial of Koskovich's zoning permit application. R.R. at 293a-97a. The Board concluded that the road demolition materials on the Property were solid waste that was not allowed to be deposited or stored in the RD area under the Ordinance. *Id.* at 297. The Board noted that even though Section 707 of the Ordinance, which provides performance standards for grading and filling, had been the subject of hearing testimony, Koskovich's zoning permit application had not mentioned Section 707. *Id.* The Board therefore did not address whether Section 707 could constitute an independent basis for a zoning permit. *Id.*

---

[5] The Ordinance defines "solid waste" as: "Waste, including, but not limited to, municipal, residual, construction/demolition or hazardous wastes (as defined by [25 Pa. Code § 271.1]) including solid, liquid, semisolid or contained gaseous materials." Ordinance § 303.

Koskovich appealed to the trial court, which heard arguments and received briefs but took no additional evidence. R.R. at 346a. In a November 2021 decision, the trial court upheld the Board's determination that the material on the Property was solid waste, the storage or deposit of which is not allowed in the RD area. *Id*. at 359a-60a. As such, the trial court agreed with the Board that although Section 707 pertains to grading and filling, it could not serve as an independent basis for a zoning permit for that activity; rather, the activity must be related to a use allowed by the Ordinance. *Id*.

Koskovich timely appealed to this Court. He argues on appeal that the fill in question was "clean fill" and not "solid waste"; that grading/filling is not a "use" under the Ordinance, but is an activity that does not require a special exception or zoning permit; and, more generally, that the Board abused its discretion in making unsupported factual findings and erred as a matter of law in applying the wrong standards and factors in denying a permit for grading/filling.

## II. Discussion

Where the trial court does not take any additional evidence, appellate review of the decision of a zoning hearing board is limited to determining whether the board abused its discretion or committed legal error. *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009). With regard to legal error, where a word or phrase in a zoning ordinance is defined in the ordinance, a court is bound by that definition. *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 899 (Pa. 2019) (citing *Hughes v. Sch. Dist. of Pittsburgh*, 108 A.2d 698, 699 (Pa. 1954)). A zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference because, "as the entity

8

charged with administering the zoning ordinance, the board possesses knowledge and expertise in interpreting that ordinance." *Risker v. Smith Twp. Zoning Hearing Bd.*, 886 A.2d 727, 731 (Pa. Cmwlth. 2005). Similarly, because a township's zoning officer is charged with the administration and execution of the ordinance, his interpretation of the ordinance is "entitled to deference and should not be disregarded unless shown to be clearly erroneous." *McIntyre v. Bd. of Supervisors of Shohola Twp.*, 614 A.2d 335, 337 (Pa. Cmwlth. 1992).

With regard to land uses, the Ordinance defines "use" as "[t]he specific purpose for which land or a building is designed, arranged, intended, or for which land is or may be occupied or maintained." Ordinance § 303. Section 404.1(A)(1) of the Ordinance ("Use Regulations") states:

> No land . . . in a particular zoning district shall be used for any use which is not specifically listed on the Schedule of Uses for that particular district, and only in accord with all other requirements of this Ordinance. In other words, any use not allowed as a principal permitted use, accessory use, conditional use or special exception, or allowed by the Zoning Hearing Board in accord with §404.2 ["Special Exception for Use Not Specified in Schedule of Uses"] within a particular zoning district, shall be deemed to be prohibited within that zoning district.

Ordinance § 404.1(A)(1). Likewise, the Ordinance's Schedule of Uses for the RD area states: "Uses not specifically listed by this schedule shall not be permitted in the RD District except as approved in accord with § 404.2 [Special Exception for Use Not Specified in Schedule of Uses]."[6] *See* Ordinance Art. IV (Schedules of Uses).

---

[6] As addressed above, this matter was previously adjudicated unsuitable for recourse to a special exception.

9

The Ordinance differentiates between uses and performance standards. Article VII as a whole contains performance standards for various purposes, including to ensure public and environmental health and safety and to prevent nuisance uses and activities. *See* Ordinance § 701. The Ordinance imposes such standards as specific requirements distinct from and supplemental to formally recognized land uses: "any *use permitted by this Ordinance* may be undertaken and maintained *if it conforms to all applicable requirements of this Ordinance*, including the standards in this [Section]." *Id.* (emphasis added).

Koskovich provides no authority to support his position that the performance standards in the Ordinance are intended to stand on their own as authority for a given activity or use even if that activity or use is not allowed in the relevant zoning district. Indeed, his argument directly contradicts established principles of zoning law concerning the relationship between uses and performance standards. *See, e.g.*, *Loveall v. Zoning Hearing Bd. of Twp. of Elizabeth*, 560 A.2d 919, 921 (Pa. Cmwlth. 1989) (explaining that where a zoning officer concludes that a particular use is allowed, there is an additional affirmative duty on the officer to determine whether the use satisfies the ordinance's performance standards); *Foster Grading Co. v. Venango Twp. Zoning Hearing Bd.*, 412 A.2d 647, 648 (Pa. Cmwlth. 1980) (stating that manufacturing was allowed as a conditional use under the zoning ordinance "upon compliance with performance standards set out in the ordinance").

Here, the Ordinance's provisions are consistent with the longstanding principle articulated in *Loveall* and *Foster Grading*. Article VII, Section 707 (Grading and/or Filling Operations) states, in pertinent part:

> The grading and/or filling of a lot, parcel or any site involving cuts and/or fills with an average depth greater

10

than five (5) feet over an area of one (1) acre or more[7] *shall require a zoning permit when such grading is not part of an approved subdivision or land development plan.*

Ordinance § 707 (emphasis added). As noted, this Section includes specific performance standards for grading and filling on a given property, including rules for slopes, stormwater, and erosion and sediment control. *See* Ordinance § 707.1-707.6.

Grading and filling are usually licensed by the DEP but remain subject to local zoning laws. We have explained:

> Permits for earth disturbance, including the importation of fill and which involve more than one acre, must be secured through the [DEP]. Issuance of these permits are [sic] independent of, and not governed by, local municipal zoning ordinances . . . but the activity is nonetheless subject to municipal zoning ordinances, which regulate the uses permitted to be conducted on property.

*Greenview Props. 862, LLC v. Hamilton Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 799 C.D. 2020, filed May 26, 2021), slip op. at 3 n.2, 2021 WL 2135951, at *1 n.2 (citation omitted).[8]

As stated above, in light of the Board's position that Koskovich's application did not cite Section 707, it did not specifically address whether that provision may be an independent basis for a zoning permit. R.R. at 297a. However, the trial court found that although Section 707 pertains to grading and filling, it could not serve as an independent basis for a zoning permit for that activity where the use was not otherwise allowed by the Ordinance. *Id*. at 359a-60a.

---

[7] It is not in dispute that Koskovich's filling activities involve an average depth greater than five feet over an area of at least one acre.

[8] This Court's unreported memorandum opinions issued after January 15, 2008 may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

Koskovich argues that Section 707 authorizes a permit solely for grading and filling rather than for an underlying use, so long as the activity complies with Section 707's enumerated performance standards. Koskovich's Br. at 22-24. He asserts that requiring a zoning use permit for grading and filling would improperly restrict Township landowners. *Id*. at 27. Objectors reply that Section 707's performance standards are not independent of scheduled uses and that the Ordinance does not have a mechanism for a landowner to acquire a zoning permit for grading and filling without an otherwise allowed use. Objectors' Br. at 25-30.

We agree with the trial court and Objectors. As set forth above, Section 707 of the Ordinance requires a *zoning permit* for grading or filling that is not part of an approved subdivision or land development plan. Ordinance § 707. A zoning permit acknowledges that a use is permitted under the Ordinance, by right or by special exception or conditional use, and is defined in the Ordinance as follows:

> Zoning Permit – Indicates that a proposed use, building or structure as documented in the development application will comply with the requirements of this Ordinance. Issued by the Zoning Officer for principal permitted uses, accessory uses and signs following confirmation of compliance with applicable standards, for conditional uses following approval by the Board of Supervisors, and for special exceptions following approval by the Zoning Hearing Board.

Ordinance § 303. Thus, a zoning permit must be issued in relation to an allowed *use*.

Koskovich argues that the project in question would comply with the specific requirements of Section 707 and that it was not necessary to establish that the activity was a use specifically allowed in the RD district. However, Section 707 expressly requires a "zoning permit," not merely a "permit." That requirement

12

cannot be isolated from the use schedules and limitations set forth in Article IV of the Ordinance and cannot serve as independent authority for a grading and filling permit. Where grading/filling is not allowed independently as a use within a particular district, or the grading/filling activity is not in conjunction with an approved subdivision or land development plan (which also presumes compliance with those zoning uses allowed within the district), a zoning permit cannot be issued. Neither circumstance is present here.

Koskovich disputes the Board's determinations that the material placed on the Property was solid waste rather than clean fill and that placement of the material constituted a use that would need to be allowed in the RD area rather than merely an activity that might not require compliance with the RD schedule of uses. Koskovich's Br. at 31-39. However, the Board was within its discretion and function as factfinder and judge of credibility to accept Objectors' witnesses' testimony to the contrary and to conclude that the material was solid waste, the "storage" of which (the closest analog to grading and filling) is not a use allowed in the RD district.[9] R.R. at 297a. As stated, even if the Board had erred and the material should have been deemed clean fill and its placement on the Property deemed an activity rather than a use, Section 707 still requires a "zoning permit," which in turn requires the

---

[9] A reviewing court may not substitute its interpretation of the evidence for that of the zoning board, which has "expertise in and knowledge of local conditions." *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9, 13 (Pa. Cmwlth. 2015) (citations omitted). The zoning board's function is to weigh the evidence and it is the sole judge of the credibility of witnesses and the weight afforded their testimony. *SPC Co. v. Zoning Bd. of Adjustment of the City of Phila.*, 773 A.2d 209, 214 (Pa. Cmwlth. 2001). The appellate court must view the evidence in a light most favorable to the prevailing party, which must be given the benefit of all reasonable inferences arising from the evidence. *Id.* When our review is of the Board's decision, we are not bound by the trial court's decision. *See Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 887 (Pa. Cmwlth. 2015).

applicant to establish some use allowed within the appropriate zoning district or an approved subdivision or land development plan.

### III.  Conclusion

Accordingly, the Board did not err in upholding the zoning officer's denial of Koskovich's application, and the trial court did not err in affirming the Board.  We therefore AFFIRM the trial court's order.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank W. Koskovich,             :
                Appellant     :
                          :
        v.               :
                          :
The Board of Supervisors of The   :
Sterling Township, The Sterling   :
Township Zoning Hearing Board,  :
Charles Tufano and Sandra Tufano, :
husband and wife, Charles A. Landon :
and Donna L. Landon, husband and  :
wife, and James Lincoln Arthur and  :   No. 1441 C.D. 2021
Karen L. Arthur, husband and wife  :

## O R D E R

AND NOW, this 19th day of April, 2023, the November 16, 2021, Order of the Court of Common Pleas of Wayne County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge